790 F.2d 186
 20 Fed. R. Evid. Serv. 999
 UNITED STATES of America, Plaintiff, Appellee,
v.
Frederick SILVESTRI, Jr., Defendant, Appellant.
UNITED STATES of America, Plaintiff, Appellee,
v.
Jerry ZULLO, Sr., Defendant, Appellant.
UNITED STATES of America, Plaintiff, Appellee,
v.
Joseph MARSHALL, Defendant, Appellant.
UNITED STATES of America, Plaintiff, Appellee,
v.
John CASSIDY, Defendant, Appellant.
UNITED STATES of America, Plaintiff, Appellee,
v.
Edward WALSH, Defendant, Appellant.
UNITED STATES of America, Plaintiff, Appellee,
v.
Theodore O. SETTERLUND, III, Defendant, Appellant.
UNITED STATES of America, Plaintiff, Appellee,
v.
John E. ZULLO, Defendant, Appellant.
UNITED STATES of America, Plaintiff, Appellee,
v.
Richard J. HEPPENSTALL, Defendant, Appellant.
 Nos. 84-1673, 84-1674, 84-1685 to 84-1688, 84-1762 and 84-1870.
 United States Court of Appeals,
First Circuit.
 Argued Dec. 3, 1985.
Decided May 7, 1986.
 
 Francis K. Morris, with whom Morris & Collins, Framingham, Mass., was on brief, for defendant, appellant Frederick Silvestri, Jr.
 Albert F. Cullen, Jr., Robert V. Carr, with whom Cullen & Wall, Boston, Mass., were on brief, for defendants, appellants Jerry Zullo, Sr. and John E. Zullo.
 Willie J. Davis, Boston, Mass., was on brief, for defendant, appellant Joseph Marshall.
 Daniel J. O'Connell, III, Boston, Mass., was on brief, for defendant, appellant John Cassidy.
 Steven A. Sussman, Boston, Mass., was on brief, for defendant, appellant Edward Walsh.
 Charles E. Chase, Boston, Mass., was on brief, for defendant, appellant Theodore O. Setterlund, III.
 Ellen Wade, Boston, Mass., was on brief, for defendant, appellant Richard J. Heppenstall.
 Mervyn Hamburg, Asst. U.S. Atty., Washington, D.C., with whom William F. Weld, U.S. Atty., Boston, Mass., was on brief, for plaintiff, appellee.
 Before COFFIN, BREYER and TORRUELLA, Circuit Judges.
 TORRUELLA, Circuit Judge.
 
 
 1
 Appellants Frederick Silvestri, Jr., Jerry Zullo, Sr., Joseph Marshall, John Cassidy, Edward Walsh, Theodore O. Setterlund, III, John E. Zullo and Richard J. Heppenstall appeal from jury convictions on narcotics charges. They raise numerous claims challenging the legality of their convictions. We reject these claims, and affirm the judgment of the district court.[1]
 
 I. Appellant Silvestri
 
 2
 Silvestri was convicted of conspiracy to import marijuana and importation of marijuana, in violation of 21 U.S.C. Secs. 952(a), 963 and 960(a). He received a term of imprisonment of nine months and a two-year special parole term.
 
 
 3
 Silvestri first contends that the district court erred in denying a severance motion under Fed.R.Crim.P. 14 because the evidence against codefendants was stronger than evidence against him.
 
 
 4
 A motion for severance is addressed to the sound discretion of the trial court and to prevail a defendant must make a strong showing of prejudice. United States v. Arruda, 715 F.2d 671, 679 (1st Cir.1983). We review a trial court's denial of a severance motion for abuse of discretion and reverse only if denial deprived defendant of a fair trial, resulting in a miscarriage of justice. Id. Such is not the case here.
 
 
 5
 First, severance is not required merely because the government's evidence against a defendant may be stronger than evidence against another defendant in the case. United States v. Smolar, 557 F.2d 13, 18 (1st Cir.), cert. denied, 434 U.S. 866, 98 S.Ct. 203, 54 L.Ed.2d 143 (1977). Thus, the fact that the evidence against codefendants may have been stronger than the evidence against Silvestri does not amount to prejudice justifying reversal. Second, the district court properly instructed the jury to "view the evidence as to each defendant separately as to each count in which the defendant is charged." Appropriate limiting instructions to the jury are an adequate safeguard against evidentiary spillover. United States v. Porter, 764 F.2d 1, 12 (1st Cir.1985). Nothing here suggests that the cautionary instruction noted above was insufficient to prevent evidentiary spillover. Finally, it is significant that the jury returned a verdict acquitting appellant of conspiracy to possess marijuana with intent to distribute, while finding him guilty of other counts involving conspiracy to import marijuana, and importation of marijuana. Such a discriminating verdict is indicative that the jury was able to and did consider each count individually. Id. at 14. Thus, we cannot say that the joint trial produced a miscarriage of justice in Silvestri's case.
 
 
 6
 In short, that appellant had a better chance of acquittal at a separate trial is not enough to justify severance. Accordingly, we are not persuaded that the district court committed reversible error in denying Silvestri's motion to sever.
 
 
 7
 Next, Silvestri contends that his fifth amendment privilege against self-incrimination was violated when the district judge required him to stand up and answer "yes" to a question during trial. The trial judge asked Silvestri to stand up after the latter was described and identified by a government witness. The witness did not, however, know appellant's name. At that point the district judge asked appellant if he was Silvestri. Silvestri claims that since he answered "yes" to the court's inquiry his fifth amendment privilege against self-incrimination was invalidly compromised. We disagree.
 
 
 8
 The Fifth Amendment protects individuals from compelled testimonial communications. Schmerber v. California, 384 U.S. 757, 761, 86 S.Ct. 1826, 1829-30, 16 L.Ed.2d 908 (1966). The critical question, for purposes of the self-incrimination clause, is whether the forced utterances had communicative content. Walker v. Butterworth, 599 F.2d 1074, 1082 (1st Cir.1979). Statements used simply for identification lack communicative content and are not protected by the Fifth Amendment. Meggs v. Fair, 621 F.2d 460, 462 (1st Cir.1980). The record shows that Silvestri's answer to the trial judge's inquiry was nontestimonial, having been used exclusively for purposes of identification. Accordingly, we cannot say that appellant's fifth amendment rights were violated in the instant case. Id.
 
 
 9
 Next, Silvestri claims that the district court erred in charging the jury. He contends that the trial judge improperly singled out appellant by using a part of the indictment referring to him exclusively to explain the meaning of "overt act" to the jury.
 
 
 10
 In charging the jury, the trial judge is not limited to instructions of an abstract sort. Quercia v. United States, 289 U.S. 466, 469, 53 S.Ct. 698, 699, 77 L.Ed. 1321 (1933); United States v. Blevins, 555 F.2d 1236, 1240 (5th Cir.1977). It is within the judge's province to assist the jury by commenting and analyzing the evidence. Id. The judge, however, must make it clear that all matters of fact are submitted for the jury's determination. United States v. Blevins, supra at 1240. The record shows that the trial judge unmistakably instructed the jury that they were the sole triers of facts. She stated that the jury was not to infer from the judge's comments any views as to "the guilt or innocence or the accuracy of the government's proof as to any of the defendants." Thus, we cannot say that the trial court's effort to assist the jury in understanding the law of "overt act" requires reversal.
 
 
 11
 Lastly, Silvestri faults the court for having charged:
 
 
 12
 What you should do is to review the evidence and reconstruct the events surrounding the importation and determine, first of all, whether you believe the witnesses, and to the extent that you believe the witnesses, determine what happened to Gloucester and--I think it was mostly in Gloucester, as far as Mr. Silvestri is concerned and this charge is concerned--what did he do, what did he say, what did the others do and say in his presence, and how did he respond to that. And then decide whether he imported marijuana or aided and abetted the importation, and whether he did so willfully.
 
 
 13
 (Emphasis added). Silvestri complains that the court below erroneously assumed that he had been conclusively identified as having been at Gloucester with other codefendants. We disagree. A fair reading of the charge reveals that the trial judge made it clear to jurors of the need to believe witnesses before concluding Silvestri's presence at Gloucester. We are persuaded that the district court did not assume that appellant had been conclusively identified.
 
 
 14
 In sum, the district court committed no reversible error regarding appellant.[2] Therefore, Silvestri's conviction should stand.
 
 II. Appellant Cassidy[3]
 
 15
 Cassidy was convicted of (1) conspiracy to import marijuana in violation of 18 U.S.C. Sec. 963 and 18 U.S.C. Sec. 2; and (2) conspiracy to possess marijuana with intent to distribute in violation of 18 U.S.C. Sec. 2 and 21 U.S.C. Sec. 846. He was sentenced to a term of imprisonment of two years.
 
 
 16
 Cassidy first argues that the district court unduly limited his cross-examination of Robert Frappier, a key government witness. Frappier testified pursuant to a plea agreement made contingent upon "full cooperation" with the government. Under the agreement, "full cooperation" meant that Frappier would, inter alia, (1) disclose all assets in which he had an interest and all assets in which he had had an interest in the last fifteen years; and (2) forfeit to the United States assets or interests obtained either in payment for illicit drug activity or with funds or other things of value ultimately traceable to such activity. Furthermore, the agreement stated that the government could, "in its discretion, allow Frappier to retain one asset which might otherwise be subject to forfeiture ..."
 
 
 17
 At trial, the district court refused to allow defense counsel to cross-examine Frappier as to the identity of his assets. The court also prohibited cross-examination as to (1) whether Frappier's assets were under aliases the witness had employed; (2) whether Frappier had empowered anyone to do transactions with his assets; (3) whether all of the assets were in the United States; and (4) what the value of his most valuable asset was. Cassidy complains that the district court's prohibitions violated his right to cross-examine Frappier.
 
 
 18
 Trial courts are granted broad discretion to control the scope of cross-examination. United States v. Barrett, 766 F.2d 609, 614 (1st Cir.1985). The two purposes served by cross-examination are (1) to allow the defendant to impeach a witness' credibility; and (2) to expose a witness' biases and possible motives for testifying. Davis v. Alaska, 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974). A trial court's restrictions on cross-examination must be sustained if jurors have had sufficient information to appraise witnesses' veracity, biases and motives for testifying. United States v. Tracey, 675 F.2d 433, 437-38 (1st Cir.1982). Cassidy contends that the district court deprived appellant of the opportunity to expose Frappier's lack of veracity by examining the witness as to his assets and lack of compliance with the "assets" portion of the agreement. We disagree.
 
 
 19
 Frappier testified that in his view forfeitable assets amounted to $6.7 million. Also, he stated that (1) he had made profits of over $20 million smuggling drugs; (2) a portion of his assets were held under the name of third parties; (3) none of the assets was of a liquid nature; (4) the assets were not generating income; (5) he had not told the government about any of his assets; and (6) no forfeitures had yet occurred. We are satisfied that sufficient evidence regarding Frappier's assets and compliance--or lack thereof--with the "assets" portion of the plea agreement was before the jury to satisfy whatever purpose defense counsel had in asking excluded questions.
 
 
 20
 Moreover, we note that Frappier testified that he had pleaded guilty to charges covering eleven separate marijuana importation and distribution ventures and that in the future he would plead guilty to an indictment charging him with having imported approximately 18,000 pounds of marijuana into Oregon. Counsel questioned Frappier about the witness' drug-smuggling activities of the past ten years. Also, Frappier testified that he stood to gain years of freedom from imprisonment if he cooperated fully with the government. Thus, jurors had before them all the evidence they needed to recognize the vulnerability of the witness' testimony. Defense counsel clearly focused through cross-examination Frappier's credibility and motives for testifying. Accordingly, we are persuaded that the district court did not commit reversible error in limiting the cross-examination of Frappier.
 
 
 21
 Finally, Cassidy complains that the district court erred in instructing the jury on the testimony of accomplice-witnesses. Specifically, appellant objects that the court below refused to instruct the jury as follows:
 
 
 22
 [Y]ou should bear in mind that a witness who has entered into such ... [a plea] agreement has an interest in this case different than any ordinary witness. A witness who realizes that he may be able to obtain his own freedom, or receive a lighter sentence by giving testimony favorable to the prosecution, has a motive to testify falsely ...
 
 
 23
 Appellant suggests that if, as here, a government accomplice-witness has not been sentenced, the government could pressure the witness by conditioning the sentence upon his testimony being favorable to the government. Thus, he claims that the proposed instruction would have been particularly effective in conveying the message that the testimony of an accomplice-witnesses had to be scrutinized with care.
 
 
 24
 Instructing the jury on accomplice-witnesses, the trial court stated:
 
 
 25
 [T]he testimony of an accomplice must always be scrutinized by a jury with great care and great caution. More care and more caution than that of an ordinary witness who is not an accomplice. They may have feelings about the defendant that affects their testimony. And you should not convict a defendant on the unsupported testimony of an accomplice unless you believe beyond a reasonable doubt that that accomplice is telling the truth.
 
 
 26
 Now, in this case, there was also evidence that some of the accomplices made plea agreements with the government under which they received additional considerable advantages. You may consider these agreements and the witnesses' hopes as to future advantages, in judging their credibility as well.
 
 
 27
 With respect to Frappier, Mining and Tindall, particularly keep in mind in judging their testimony and their credibility that the government has the power to confer or withhold future advantages, depending on the value of their cooperation.
 
 
 28
 The charge here was clear that the testimony of accomplice-witnesses was to be scrutinized with care. The trial judge was careful to emphasize that some of the witnesses hoped to receive future advantages. The agreements stated that among the possible advantages to the witnesses were lesser sentences for cooperating with the government. The judge read the witnesses' agreements to the jury and gave the jury a copy of the agreements. We are satisfied that the jury could not have failed to be aware of the need to scrutinize the accomplice-witnesses' testimony with care due to the possibility that reduced sentences could be provided for cooperating with the government.
 
 
 29
 In short, nothing in the record justifies reversing Cassidy's convictions.
 
 III. Appellant John E. Zullo[4]
 
 30
 Zullo was convicted of conspiracy to import marijuana in violation of 21 U.S.C. Secs. 952(a), 960 and 963, conspiracy to possess marijuana with intent to distribute in violation of 21 U.S.C. Sec. 846, and possession of marijuana with intent to distribute in violation of 21 U.S.C. Sec. 841(a)(1) and 18 U.S.C. Sec. 2. He was sentenced to a forty-two months term of imprisonment and a special parole term of three years.
 
 
 31
 Appellant complains that the district court committed reversible error in refusing to instruct the jury as follows:
 
 
 32
 Unless at least two persons agree as to the joint objective, there is no conspiracy. If one of the persons merely pretends to agree or feigns agreement, there is no conspiracy. If one defendant cooperates with others solely to deceive them and with the goal of stealing from them or otherwise frustrating their purposes, there is no true agreement and the conspiracy has not been proved.
 
 
 33
 Appellant argues that the trial court erred because (1) defendants are entitled to instructions on any defense theory for which there is foundation in the record; and (2) the only agreement found here with respect to appellant was an agreement to hijack the marijuana from other codefendants and to frustrate the object of the charged conspiracy.
 
 
 34
 A criminal defendant is entitled to a jury instruction on any theory providing a legal defense to the charge against him, assuming there is evidence in the record supporting it. United States v. Creamer, 555 F.2d 612, 616 (7th Cir.1977). However, it is not error for the court to refuse a request to instruct as to a defendant's theory of the case where facts making up the theory, if believed, will not defeat the factual theory of the prosecution. United States v. Lewis, 592 F.2d 1282, 1285 (5th Cir.1979); United States v. Leach, 427 F.2d 1107, 1110 (1st Cir.1970). Such is the case here.
 
 
 35
 Government witnesses testified that several of the codefendants here arranged for the shipment of approximately 45,000 pounds of marijuana from Santa Marta, Colombia to the United States. The marijuana was due to arrive on mother ships from which it was supposed to be off-loaded into smaller boats for shipment to Maine, Rhode Island, and Massachusetts. Upon arrival on shore, the marijuana would be transferred to a house owned by one Paul Guidetti (Guidetti), a large marijuana distributor working for accomplice-witness Paul Frappier. Codefendant Salvatore Michael Caruana (Caruana) was to arrange for transportation of the marijuana from the boats to the house. Appellants John and Jerry Zullo would oversee the off-loading and follow the marijuana to Guidetti's house. Caruana was to receive a portion of the marijuana once it was secured at the house.
 
 
 36
 Evidence at trial established that, contrary to plans, Caruana "hijacked" and transported the 15,000 pounds of the Rhode Island shipment with the assistance of John and Jerry Zullo to a house in Worcester, Massachusetts belonging to one Arnold Katz (Katz), the operator of a drug distribution network. Subsequently, other codefendants were notified of the Katz stash house, visited it, inspected the marijuana, and agreed with Caruana to remove approximately 8,000 pounds to the originally agreed Guidetti house. Katz distributed the remaining 7,000 pounds of marijuana for Caruana and collected approximately $4,500,000 for the latter. The removed 8,000 pounds were distributed by Guidetti on Frappier's behalf.
 
 
 37
 Even if jurors had believed Zullo's claim that he hijacked 15,000 pounds of marijuana to frustrate the original conspiracy, appellant's contention fails. The alleged hijacking did not change the nature of Zullo's involvement; it changed only the facts as to where and by whom the marijuana was distributed. Zullo's theory would not have defeated the government's claim that he participated in a scheme to import, possess, and distribute marijuana. Thus, the district court properly refused to instruct the jury as proposed by Zullo. Zullo's convictions stand.
 
 IV. Appellant Richard J. Heppenstall
 
 38
 Heppenstall was convicted of (1) conspiracy to possess marijuana with intent to distribute in violation of 21 U.S.C. Sec. 846; and (2) possession of marijuana with intent to distribute in violation of 21 U.S.C. Sec. 841(a)(1) and 18 U.S.C. Sec. 2. He was sentenced to a three-year term of probation and a special parole term of two years.
 
 A.
 
 39
 Prior to trial, Heppenstall moved to dismiss the indictment on the ground that the government had granted him immunity from prosecution. He alleged that in exchange for pleading guilty in 1982 to narcotics charges unrelated to this case, the government made an oral promise not to prosecute him for any prior activity arising from his association with one Arnold Katz--a government witness--unless his actions involved a serious crime such as murder. Upon hearing testimony from three witnesses--two attorneys who represented Heppenstall in 1982, and the prosecutor--the district court denied Heppenstall's motion, reasoning that appellant never received immunity from prosecution. Appellant complains that the court committed reversible error in rejecting his claim that the government had violated an agreement not to prosecute.
 
 
 40
 The existence of a plea bargain agreement is a factual issue, and the district court's determination of the question can be set aside only if clearly erroneous. United States v. Strawser, 739 F.2d 1226, 1229 (7th Cir.), cert. denied, --- U.S. ----, 105 S.Ct. 518, 83 L.Ed.2d 407 (1984); United States v. Quigley, 631 F.2d 415, 416 (5th Cir.1980). Heppenstall alleges that the trial judge's finding on the immunity issue is clearly erroneous because (1) the two attorneys who represented him in 1982 allegedly were specific and unequivocal in their testimony; and (2) by contrast, the prosecutor had been unable to remember whether he had promised to exercise his discretion to protect Heppenstall from future prosecution. Therefore, he claims that the district court should have rejected the prosecutor's "equivocal" testimony that no immunity had been given to Heppenstall. We cannot agree.
 
 
 41
 Although it is true that the prosecutor testified to not recalling whether he had promised to give appellant special consideration in exercising his discretion to prosecute, it is equally certain that he denied having offered guarantees that Heppenstall would never be prosecuted. He also unequivocably denied that any contingency attached to future prosecutions. We are thus ultimately dealing with a credibility problem. This is classically an issue for determination by the finder of fact. See Slavin v. Curry, 690 F.2d 446; 449 (5th Cir.1982). It was up to the district judge to decide who had more credence under the circumstances, taking into consideration all the nuances brought forth by live testimony but which are unavailable to an appeals court. Significantly, no one testified to having told Heppenstall that he would not be prosecuted in the future for drug transactions with Katz, or that he would be prosecuted only if he committed murder. Moreover, no "guarantee from immunity except for something like murder" was revealed at the proceedings in which Heppenstall pled guilty in 1982. At the time, the government simply recommended that appellant be sentenced to a three-year term of imprisonment and agreed to dismiss a count of the indictment. In view of the foregoing, we cannot say that the district court was clearly erroneous in finding that the prosecutor never promised appellant immunity from prosecution.
 
 B.
 
 42
 Along with other codefendants, appellant was charged with, inter alia, conspiracy to import marijuana and conspiracy to possess marijuana with intent to distribute. At trial, the district court followed United States v. Ciampaglia, 628 F.2d 632, 638 (1st Cir.1980), cert. denied, 449 U.S. 956, 101 S.Ct. 365, 66 L.Ed.2d 501 (1981), and conditionally admitted against Heppenstall and others, testimony of out-of-court statements by coconspirators Frappier, Mining, Tindall, and Katz. These statements related only to the conspiracy to import marijuana, and failed to mention Heppenstall. At the close of the government's case, the district court noting the absence of evidence to link appellant to the importation scheme, directed a verdict of acquittal for Heppenstall as to the importation conspiracy. Upon making the United States v. Petrozziello[5] ruling at the close of the evidence, the district court admitted the coconspirators' statements, but failed to instruct the jury not to consider said statements against Heppenstall. On appeal, Heppenstall urges (1) that the statements were inadmissible hearsay; and, as they had been conditionally admitted under Ciampaglia, (2) that the district court committed reversible error in failing to instruct jurors not to consider the statements against him.
 
 
 43
 We agree with appellant that the statements were hearsay as to Heppenstall and therefore inadmissible against him, see United States v. Palow, 777 F.2d 52, 56-57 (1st Cir.1985). We also are of the opinion that it would have been better practice to instruct the jury not to consider the statements. However, we disagree that reversal is justified. For one thing, the coconspirators' statements referred to the importation conspiracy and were devoid, as noted by Heppenstall, of references to him. Also, the district court instructed that none of the defendants had been charged in all counts and that, accordingly, the jury would "have to go through the evidence piece by piece and consider separately each defendant and each count in which that defendant is charged." It is likely that in evaluating the coconspirators' statements the jury noticed (1) the total absence of references to appellant; and (2) that the statements referred exclusively to a count inapplicable to Heppenstall. Thus, there is little reason to believe that jurors would have considered said statements in determining appellant's guilt. More importantly, however, there was independent evidence linking appellant to the counts as to which he was convicted. Therefore, even though the district court should have instructed the jury not to consider the coconspirators statements against appellant, we are satisfied that this omission is harmless, and does not justify reversal.[6] Heppenstall's conviction should stand.
 
 
 44
 Affirmed.
 
 
 
 [1]
 This case arises out of the same nucleus of facts as United States v. Dailey, 759 F.2d 192 (1st Cir.1985). In Dailey we refused to allow the exclusion of testimony by government accomplice-witnesses testifying pursuant to a contingent plea agreement. Appellants urge that we reconsider that holding since several key government witnesses testified here pursuant to the same plea agreement upheld in Dailey. As grounds therefor, appellants rely on the same arguments raised by defendants in Dailey. 759 F.2d at 193-98; see also United States v. Dailey, 589 F.Supp. 561 (D.Mass.1984). As we consider the Dailey holding persuasive we reject appellants' claim for the reasons set forth therein. 759 F.2d at 198-200
 
 
 [2]
 Silvestri also alleged that the district court committed reversible error in limiting his cross-examination of government witness Robert Frappier. For the reasons set forth below, post at 9-12, we reject Silvestri's claim. Likewise, we reject his claim that the court erred in not instructing the jury as proposed by appellant John Cassidy on accomplices' testimony. Post at 12-15
 
 
 [3]
 Appellants Walsh, Marshall, and Setterlund adopted by reference arguments raised in Cassidy's brief. Fed.R.App.P. 28(i)
 
 
 [4]
 Appellant Jerry Zullo adopted by reference John E. Zullo's brief. Fed.R.App.P. 28(i)
 
 
 [5]
 548 F.2d 20, 22-23 (1st Cir.1977)
 
 
 [6]
 For the reasons stated above, ante at 191-193, we also reject Heppenstall's claim that the court committed reversible error in limiting his cross-examination of Frappier