UNITED STATES of America, Appellee,

v.

Bernard Michael McLAUGHLIN, Defendant, Appellant.

UNITED STATES of America, Appellee,

v.

David Carl BRUCE, Defendant, Appellant.

Nos. 91–1455, 91–1456.

United States Court of Appeals, First Circuit.

Heard Oct. 10, 1991.

Decided Feb. 18, 1992.

Jonathan R. Saxe, by Appointment of the Court, with whom Twomey and Sisti Law Offices, Portsmouth, N.H., was on brief for appellant Bernard Michael McLaughlin.

Bernard J. Robertson, Exeter, N.H., for appellant David Carl Bruce.

Arnold H. Huftalen, Asst. U.S. Atty., with whom Jeffrey R. Howard, U.S. Atty., Concord, N.H., was on briefs for the U.S.

Before CAMPBELL, Circuit Judge, BROWN,* Senior Circuit Judge, and BOWNES, Senior Circuit Judge.

LEVIN H. CAMPBELL, Circuit Judge.

David Bruce and Bernard McLaughlin appeal from their convictions in the United States District Court for the District of New Hampshire for bank fraud and conspiracy to commit bank fraud. Finding no reversible error, we affirm the convictions.

On appeal, Bruce's claims of error revolve around the district court's denial of

---

* Of the Fifth Circuit, sitting by designation.

his motion to suppress based upon a purported immunity agreement. McLaughlin, on the other hand, challenges the lower court's evidentiary rulings at trial, its refusal to sever, and the alleged insufficiency of evidence. We turn first to Bruce's claims of error.

## I. *Bruce—Background*

The United States Customs Service, in conjunction with the FBI and the IRS, was conducting an investigation into various illegal activities of one William Wood ("Wood"). In 1987, Bruce began cooperating with the authorities in the investigation of a large scale fraud involving Wood and the Bank of Marlborough in Massachusetts. Bruce was contacted because some checks from the Bank of Marlborough were traced to Bruce's business, Exeter Restaurants. Bruce agreed to cooperate and did cooperate, meeting with FBI, customs, and other investigators at various times. According to Bruce's testimony at the suppression hearing, "in the initial meetings ... the subject was primarily the Wood affair ... but with each meeting the discussion was leaning in the direction of entangling Bernard McLaughlin, myself and others." Bruce said he was assured by law enforcement authorities that they "would always do everything they possibly could to see that [he] was not indicted in this matter" in return for the information he was providing. The record is unclear as to Bruce's precise connection with the Bank of Marlborough fraud. It appears, however, that Bruce travelled to and from Canada on Wood's behalf and that this activity was being investigated at the time.

In the course of the foregoing investigation, lawful wiretaps were placed on Wood's telephone in 1987–88. Certain overheard conversations indicated that Bruce and McLaughlin, in conjunction with Wood, were involved in a separate conspiracy to defraud the Bank of New England in Springfield, Massachusetts. These recorded conversations, ultimately used as evidence in the present case, revealed that McLaughlin sought a loan from the Bank of New England. The stated purpose of the loan was to purchase a piece of heavy construction equipment, namely a Caterpillar 966 C, from Bruce. To secure this loan, McLaughlin made several false representations to the Bank of New England. He offered as collateral another Caterpillar he supposedly owned and the Caterpillar he was supposedly to buy from Bruce. Neither Bruce nor McLaughlin, however, owned the equipment. The serial numbers of both machines, required as proof of ownership, were supplied by Wood. Believing that the principal lent to McLaughlin was secured by the two pieces of equipment, the Bank of New England issued a check in the amount of $60,000 to Exeter Restaurants. Bruce in turn deposited the check in his account. Subsequently, on March 5, 1987, Bruce wrote two checks to McLaughlin, one for $50,000 and the other for $10,000.

Between 1988 and 1990, Bruce continued to cooperate with the government and met several times with officials. While Bruce testified that his cooperation extended to the subject matter of the instant case, government witnesses denied this. In 1990, Bruce met with Assistant U.S. Attorney Cannon. Bruce testified they may have met twice or three times, but Cannon testified, and the district court supportably found, that they met only twice. The first meeting, in March, 1990, was at the same time Bruce appeared to testify before a grand jury. It is undisputed that Bruce's grand jury testimony then was unrelated to the present case. Before he testified, according to Bruce's version,

Mr. Cannon said that the fellows from each agency have told him of my past cooperation and he certainly hoped that that would continue, and if it did continue he would do everything within his power to see that I was not indicted.

Bruce went on to say that Cannon told him he (Cannon) was "the person who ultimately made that decision.... And when he told me that I told him everything fully and completely *about this case*." (Emphasis supplied.)

Cannon, in his own testimony, did not disagree that he had made the stated promise. However, Cannon stoutly denied that

any of their discussion at this first meeting pertained in any way to the Bank of New England matter. Cannon testified that he (Cannon) knew nothing at this time of "this case now before the Court." He indicated that the conversations with Bruce at the first meeting had to do with the latter's taking checks to and from Canada for Wood, a customs violation totally unrelated to the instant indictment.

A month or more after the grand jury session, Cannon said he obtained another investigator's file and for the first time learned of Bruce's implication in the Bank of New England fraud. Cannon immediately met with Bruce in June, 1990, at which time Cannon informed Bruce that the earlier recorded conversations implicated him (Bruce) in the conspiracy to defraud the Bank of New England, and that he thought that Bruce's involvement in that conspiracy was such that he would probably be indicted. Despite this warning, Cannon testified, Bruce continued to cooperate. According to Cannon, Bruce "indicated that whether or not we intended to indict him was up to us; that he would still continue to be truthful, as he had tried to be in the past."

On August 1, 1990, a grand jury returned a three-count indictment charging McLaughlin with two counts of bank fraud in violation of 18 U.S.C. §§ 1014[1] and 1344[2] and one count of conspiracy to commit bank fraud in violation of 18 U.S.C. § 371. Bruce was charged only with a single count of conspiracy to commit bank fraud, based exclusively on his alleged involvement in the Bank of New England

matter. Wood was not indicted in this matter. Bruce engaged in plea negotiations but these broke down. The day his trial was scheduled to begin, Bruce moved to suppress, contending that, in reliance upon the government's broken promise to provide immunity, he had produced incriminatory evidence that the government intended to use at his trial. As this evidence had been, in his view, coerced, he requested its suppression. The evidence Bruce sought to suppress included the two checks he wrote to McLaughlin and the checking account statement from his own bank which reflected that transaction. Bruce argued that he had earlier turned over those documents to FBI agents in Boston while his informal immunity agreement was in effect, and that the government could not use them as evidence against him because doing so would constitute a violation of the immunity agreement and of his Fifth Amendment privilege against self-incrimination.[3] Bruce also asked the court to dismiss the charge against him as violative of the promised immunity.

The government responded that any informal immunity agreement was limited to the Bank of Marlborough fraud or, at least, to matters involving Wood other than the instant Bank of New England matter. Since the conspiracy count had to do with the Bank of New England fraud, there was no violation of the agreement. After the district court had held an evidentiary hearing on Bruce's motion to suppress, it found that the informal immunity agreement did not extend to the Bank of New England

---

1.  § 1014 **Loan and credit applications generally** ...

    Whoever knowingly makes any false statement or report, ... for the purpose of influencing in any way the action of ... any institution the accounts of which are insured by the Federal Deposit Insurance Corporation ... shall be fined no more than $1,000,000 or imprisoned no more than 30 years, or both.

2.  § 1344 **Bank fraud**

    Whoever knowingly executes, or attempts to execute, a scheme or artifice—
    (1) to defraud a financial institution; or
    (2) to obtain any of the moneys, funds, credits, assets, securities, or other property

owned by, or under the custody of, a financial institution, by means of false or fraudulent pretenses, representations, or promises; shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

3.  Cannon testified that the checks and bank statement put in evidence in this case were not the originals but were microfilm that had been subpoenaed in June or July, 1990, from the Bank. While Bruce claimed to have turned the originals over to investigators in Boston at an earlier time, these were different agents. Cannon claimed he knew nothing about the earlier transferred documents, and testified that the decision to subpoena the microfilm copies had evolved independently.

matter. *United States v. McLaughlin,* 769 F.Supp. 45, 47 (D.N.H.1991). Bruce's motion was denied orally and by an order issued on January 29, 1991.

### Bruce's Arguments on Appeal

■ Bruce argues that the district court erred in denying his motion to suppress and in finding that the informal immunity agreement did not include immunity from indictment for his activities relative to the Bank of New England transaction. The standard of review of an appeal from a denial of a motion to suppress is that the decision will be upheld if any reasonable view of the evidence supports the trial court's decision. *United States v. Young,* 877 F.2d 1099, 1100 (1st Cir.1989); *United States v. Gerry,* 845 F.2d 34, 36 (1st Cir. 1988); *United States v. Veillette,* 778 F.2d 899, 902 (1st Cir.1985), *cert. denied,* 476 U.S. 1115, 106 S.Ct. 1970, 90 L.Ed.2d 654 (1986). We are satisfied that evidence supports the district court's decision to deny the motion to suppress. We also hold that the court did not err in refusing to dismiss the indictment because of the alleged immunity agreement.

It is, of course, clear that Bruce did not receive a grant of immunity pursuant to statute.[4] According to his own testimony, he was orally promised by prosecutors during the investigation of Wood that they would do everything in their power not to indict him. In 1990, Cannon allegedly also represented that he was the person who ultimately decided whether or not to indict, indicating, Bruce said, that Cannon possessed the necessary "power" not to indict. Cannon's promise was made just before Bruce testified at the grand jury proceeding relating to the Bank of Marlborough and related matters.

■ The district court, after an evidentiary hearing, concluded that, in context, the immunity agreement made between Bruce and the government did not extend to the Bank of New England fraud charged in the instant case. 769 F.Supp. at 47. Informal promises of immunity have been recognized and enforced in a variety of circumstances short of the defendant's having claimed the Fifth Amendment privilege. *United States v. Plummer,* 941 F.2d 799, 802 (9th Cir.1991). Since these immunity-in-exchange-for-cooperation agreements are in the nature of contracts, their scope and effects are strongly influenced by contract law principles. *United States v. Hogan,* 862 F.2d 386, 388 (1st Cir.1988). *See Rowe v. Griffin,* 676 F.2d 524, 527–28 (11th Cir.1982). A defendant's rights are determined by the terms and conditions of the bargain as found by the court. Because the immunity agreement at issue here was never reduced to writing, the district judge's findings as to its content and scope were necessarily based on the rather amorphous testimony of the witnesses at the suppression hearing. The district court recognized that Bruce "argues that the context and subject matter of the earlier discussions led him to believe that immunity would extend to this case." But the court concluded that an immunity agreement *reaching this case* was never made. Bruce's contrary opinion was termed a mere nonbinding "subjective understanding." The district court found that the informal promises of immunity were limited to the investigation of Wood's activities involving the Bank of Marlborough and related issues. It saw no informal grant of immunity from prosecution for the separate fraud perpetrated by McLaughlin and Bruce on the Bank of New England. This fraud became known to Cannon only in the summer of 1990, at which time he

---

**4.** The government is authorized to grant use and derivative use immunity by 18 U.S.C. § 6002. Ordinarily, such immunity is granted under these provisions when a defendant *refuses to* testify, claiming the Fifth Amendment privilege against self-incrimination. *Kastigar v. United States,* 406 U.S. 441, 453, 92 S.Ct. 1653, 1661, 32 L.Ed.2d 212 (1972). After formally granting immunity, the government may compel testimo-

ny over the defendant's objections. As there was no such formal grant of statutory immunity here, appellant's analysis of the case in those terms is incorrect. The hearing on the motion to suppress was not, as appellant contends, a *"Kastigar* hearing." The question here is simply the scope of any informal contractual agreement made between the parties and whether the government fairly lived up to its promises.

promptly relayed his intention to prosecute to Bruce. Except for two checks and a bank statement, microfilms of which the government claims to have independently subpoenaed, the evidence against Bruce did not include materials he had earlier furnished, but could be found to have derived from the wiretap and the government's other independent investigatory efforts.

The findings of the district court after a hearing on a pretrial motion to suppress are binding on appeal unless they are clearly erroneous. *United States v. Rosen*, 929 F.2d 839, 842 (1st Cir.1991); *United States v. Walker*, 924 F.2d 1, 3 (1st Cir.1991); *United States v. Jobin*, 535 F.2d 154, 156 (1st Cir.1976). Findings are clearly erroneous only "when although there is evidence to support [the finding], the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Fortin v. Com'r of Mass. Dept. of Public Welfare*, 692 F.2d 790, 794 (1st Cir.1982), quoting *United States v. Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). After examining the transcript of the proceeding on Bruce's motion to suppress, we are left with no such definite and firm conviction of mistake. While the testimony was susceptible to more than one interpretation, the district court's findings are adequately supported.

## II. *McLaughlin—Background*

McLaughlin alleges infringement of his right to cross-examination and confrontation, deprivation of a fair trial because of the court's failure to grant his motion for a severance, and insufficiency of the evidence.

McLaughlin argues that the district court violated his Sixth Amendment right when it imposed some limitations upon the cross-examination of two government witnesses, Customs Agent Lundt and FBI Agent Rafferty. During the cross-examination of agent Lundt, counsel for McLaughlin asked him about the scheme devised by Wood to defraud the Bank of Marlborough. Counsel for Bruce objected on grounds that the Marlborough affair was irrelevant. After some discussion, the objection was sustained. The second limitation occurred during the cross-examination of FBI Agent Rafferty. Counsel for McLaughlin attempted to elicit testimony from Rafferty about statements made by McLaughlin at a bankruptcy hearing at which Rafferty was present. Both the government and counsel for Bruce objected on grounds that such evidence was hearsay and highly prejudicial to Bruce. The district court sustained the objection. McLaughlin argues that these limitations constituted a violation of his right to cross-examine and to confront opposing witnesses guaranteed by the Sixth Amendment. We disagree.

An accused's right to be confronted with the witnesses against him, guaranteed by the Sixth Amendment, has been long read as securing an adequate opportunity to cross-examine adverse witnesses. *United States v. Noone*, 913 F.2d 20, 31 (1st Cir. 1990), *cert. denied*, ﹘ U.S. ﹘, 111 S.Ct. 1686, 114 L.Ed.2d 81 (1991) (quoting *United States v. Owens*, 484 U.S. 554, 557, 108 S.Ct. 838, 841, 98 L.Ed.2d 951 (1988). The main purposes served by cross-examination are to impeach credibility and to expose the witness's biases and possible motives for testifying. *United States v. Silvestri*, 790 F.2d 186, 190 (1st Cir.1986), *cert. denied*, 479 U.S. 857, 107 S.Ct. 197, 93 L.Ed.2d 129 (1986) (citing *Davis v. Alaska*, 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974). But a defendant's right to cross-examination is not without limits. "Defendants cannot run roughshod, doing precisely as they please simply because cross-examination is underway. So long as a reasonably complete picture of the witness's veracity, bias and motivation is developed, the Judge enjoys power and discretion to set appropriate boundaries." *United States v. Boylan*, 898 F.2d 230, 254 (1st Cir.1990), *cert. denied*, ﹘ U.S. ﹘, 111 S.Ct. 139, 112 L.Ed.2d 106 (1990).

McLaughlin argues that by prohibiting the line of questioning concerning the Bank of Marlborough fraud, the district court deprived him of the opportunity to fortify his defense theory, namely, that McLaughlin was the innocent victim of a scheme designed by Wood and Bruce, who

**18**

had used a similar scam to defraud the Bank of Marlborough. However, a party has no right, unless the court in the exercise of its discretion allows, to cross-examine a witness beyond the subject matter of his direct examination and beyond matters affecting credibility. Fed.R.Evid. 611(b). If McLaughlin wished to adduce new evidence from the agents in support of his defense, he could have called the agents as defense witnesses. The limitations placed by the district court upon the cross-examination of the government agents were not unreasonable and did not constitute an abuse of discretion.

▆▆▆ Next, McLaughlin argues that the district court committed reversible error because it denied his motion for a severance. We review a trial court's denial of a severance motion for abuse of discretion and reverse only if denial deprived defendant of a fair trial, resulting in a miscarriage of justice. *United States v. Arruda,* 715 F.2d 671, 679 (1st Cir.1983). A motion for severance is addressed to the sound discretion of the trial court and to prevail, a defendant must make a strong showing of prejudice. *United States v. Perkins,* 926 F.2d 1271, 1280 (1st Cir.1991); *United States v. Silvestri,* 790 F.2d 186, 188 (1st Cir.1986). McLaughlin failed to demonstrate substantial prejudice. The record indicates that McLaughlin requested severance when he thought he was unable to establish a defense that was antagonistic to codefendant Bruce, namely, that he was the victim of a fraud devised by Bruce and Wood and that they had used that same scheme to defraud other banks in the past. The fact that two defendants assert antagonistic defenses does not, *per se,* require severance, even if defendants are hostile or attempt to cast blame on each other. *United States v. Porter,* 764 F.2d 1, 12 (1st Cir.1985), *cert. denied,* 481 U.S. 1048, 107 S.Ct. 2178, 95 L.Ed.2d 835 (1986); *United States v. Davis,* 623 F.2d 188, 194 (1st Cir.1980). We cannot say that this aspect of McLaughlin's defense was so material and significant so as to require a severance. Especially is this so where McLaughlin did not request severance until long after the trial began. Requests for severance of charges or defendants under Fed.R.Crim.P. 14 must be raised prior to trial. Fed.R.Crim.P. 12(b)(5). Having failed to move for severance prior to trial, McLaughlin waived the right to pursue the issue. *See United States v. Attanasio,* 870 F.2d 809, 815 (2d Cir.1989); *United States v. Holland,* 831 F.2d 717, 721 (7th Cir.1987).

▆▆▆ Finally, McLaughlin contends that there was insufficient evidence to convict him of the offenses charged. In reviewing the record for a sufficiency of the evidence appeal, it is well established that the evidence must be examined in its entirety, in the light most favorable to the government, to determine whether a rational trier of fact could have found guilt beyond a reasonable doubt. The government may prove its case by circumstantial evidence that need not exclude every reasonable hypothesis of innocence. *United States v. Boldt,* 929 F.2d 35, 39 (1st Cir.1991), quoting *United States v. Van Helden,* 920 F.2d 99, 101 (1st Cir.1990). The record shows that there was abundant evidence to convict McLaughlin of the offenses charged. The recorded conversations admitted at trial revealed that McLaughlin knowingly provided false information to the Bank of New England to obtain a loan without the required collateral.

*The judgment of the district court is affirmed.*