**UNITED STATES of America Plaintiff,**

v.

**Vladas ZAJANCKAUSKAS, Defendant.**

**No. CIV.A. 02–40107–NMG.**

United States District Court,
D. Massachusetts.

May 9, 2003.

Thomas J. Butters, Butters, Brazilian & Small, Boston, MA, Robert L. Sheketoff, Boston, MA, Matthew D. Thompson, Butters, Brazilian & Small LLP, Boston, MA, for Vladas Zajanckauskas, Defendant.

Mary Elizabeth Carmody, U.S. Attorneys Office, Worcester, MA, Hillary A. Davidson, U.S. Department of Justice, Washington, DC, Mark J. Grady, United States Attorney's Office, Boston, MA, Tracey A. Hardin, U.S. Department of Justice, Torts Branch, Civil Division, Washington, DC, William Henry Kenety, V, Office of Special Investigations, Criminal Division, U.S. Department of Justice, Washington, DC, Jeffrey L. Menkin, U.S. Department of Justice, Torts Branch, Civil Division, Washington, DC, Michael J. Sullivan, United States Attorney's Office, Boston, for USA, Plaintiff.

## MEMORANDUM AND ORDER

GORTON, District Judge.

In this denaturalization proceeding, the United States seeks to dismiss defendant's counterclaim for monetary damages resulting from an alleged breach of contract on the grounds that this Court lacks subject matter jurisdiction and plaintiff has failed to state a claim upon which relief can be granted.

### I. *Factual Background*

The facts stated herein are as alleged in the plaintiff's complaint. Defendant Vladas Zajanckauskas received his United States citizenship on June 15, 1956 pursuant to a federal statute which requires, in part, an applicant for citizenship to have "resided continuously, after being lawfully admitted for permanent residence, within the United States for at least five years." 8 U.S.C. § 1427(a)(1).

The United States alleges that, while Zajanckauskas did reside in the United States for the requisite five years before receiving his citizenship, he was never "lawfully admitted for permanent residence" as required by the statute because he misrepresented to immigration authorities his whereabouts and activities prior to and during World War II in order to gain entry into the United States. Moreover, because he was never "lawfully admitted for permanent residence," Zajanckauskas's subsequent naturalization under 8 U.S.C. § 1427 was also unlawful. The United States, therefore, filed this action to revoke the citizenship of Zajanckauskas pursuant to Section 340(a) of the Immigration and Nationality Act of 1952, 8 U.S.C. § 1451(a), which provides for the revocation of citizenship if it was illegally procured.

On August 8, 2002 Zajanckauskas filed and served his answer and a counterclaim

which he was subsequently allowed to amend. In that pleading he contends that he agreed to provide certain information to the United States concerning his background in consideration for the United States's promise not to use that information in "any immigration proceeding" or "any government proceeding." In support of that contention, Zajanckauskas attached to his amended answer and counterclaim a handwritten letter on Department of Justice letterhead dated May 5, 1981 ("the Letter") to that effect. The Letter was addressed to Alexander Drapos, Esq., Zajanckauskas's attorney at the time, and is signed by Norman A. Moscowitz, Office of Special Investigations with the Department of Justice.

Zajanckauskas relies on the Letter as an affirmative defense in this denaturalization proceeding. He also alleges in his counterclaim that, by filing this action against him, the United States breached the Letter agreement and violated his Fifth Amendment privilege against self-incrimination. Zajanckauskas seeks compensatory damages, punitive damages and attorneys' fees and costs in connection with the alleged breach.

The United States now moves this Court to dismiss Zajanckauskas's counterclaim for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted.

## II. *Legal Analysis*

### A. Failure to State a Claim upon Which Relief Can Be Granted

The United States moves this Court to dismiss Zajanckauskas's counterclaim, pursuant to Fed.R.Civ.P. 12(b)(6), for his failure to state a claim that would entitle him to relief under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 *et seq.* Defendant's opposition to the motion makes it clear, however, that the Federal Tort Claims Act is not a basis for his counterclaim. Rather, he asserts, his counterclaim arises under "the Little Tucker Act," 28 U.S.C. § 1346(a)(2), because the United States violated his Fifth Amendment privilege against self-incrimination and failed to perform its obligations under the immunity agreement contained in the Letter.

The United States does not contend that Zajanckauskas has failed to allege a violation of his Fifth Amendment privilege against self-incrimination or a breach of its contract with Zajanckauskas. Indeed, the United States recognizes that the alleged immunity agreement in the Letter is a contract and should be analyzed under principles of contract law. *See United States v. McLaughlin,* 957 F.2d 12, 16 (1st Cir.1992) ("Since these immunity-in-exchange-for-cooperation agreements are in the nature of contracts, their scope and effects are strongly influenced by contract law principles."). The motion of the United States to dismiss Zajanckauskas's counterclaim for failure to state a claim upon which relief can be granted will, therefore, be denied.

### B. Subject Matter Jurisdiction

### 1. Standard of Review

When deciding a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1), "the district court must construe the [counterclaim] liberally, treating all well-pleaded facts as true and indulging all reasonable inferences in favor of the [counter-claimant]." *Aversa v. United States,* 99 F.3d 1200, 1210 (1st Cir.1996). It is the burden of the counter-claimant, however, to prove the existence of subject matter jurisdiction. *Id.* at 1209.

■ In cases where the United States is a defendant, the Court's subject matter jurisdiction exists only to the extent that the United States has consented to the suit, i.e.

the United States, as sovereign, is immune from suits save as it assents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.

*MacMann v. J.R. Titus*, 819 F.2d 8, 10 (1st Cir.1987) (quoting *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941)). The same rule applies when the United States is a defendant by counterclaim. Fed.R.Civ.P. 13(d) (stating that rules governing counterclaims "shall not be construed to enlarge beyond the limits now fixed by law the right to assert counterclaims or to claim credits against the United States or an officer or agency thereof."). To satisfy his burden of proof that this Court has subject matter jurisdiction over his counterclaim, therefore, Zajanckauskas must show that the United States has specifically waived its sovereign immunity with respect to the breach of contract claim that he alleges.

■ Zajanckauskas relies on 28 U.S.C. § 1331 which provides that "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States," as one jurisdictional basis for his counterclaim. It is clear, however, that § 1331 does not waive sovereign immunity for purposes of a suit against the United States. *See Berman v. United States*, 264 F.3d 16, 20 (1st Cir.2001) ("General jurisdiction statutes such as 28 U.S.C. § 1331

... do not waive sovereign immunity and therefore cannot be the basis for jurisdiction over a civil action against the federal government."). This Court must, therefore, look elsewhere to determine whether it may entertain Zajanckauskas's counterclaim against the United States.

### 2. Tucker Act Jurisdiction

■ Zajanckauskas also relies on what is known as the Little Tucker Act for the jurisdictional basis of his counterclaim. That statute waives the sovereign immunity of the United States with respect to claims for money damages not exceeding $10,000 if such claims are

founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort ....

28 U.S.C. § 1346(a)(2). Zajanckauskas argues that his claim is cognizable under the Little Tucker Act because he seeks monetary damages from the United States for its breach of the Letter agreement.[1]

To determine whether the Little Tucker Act waives the sovereign immunity of the United States with respect to defendant's counterclaim, the Court must digest the language of that statute. *See United States v. Hohri*, 482 U.S. 64, 69, 107 S.Ct. 2246, 96 L.Ed.2d 51 (1987). As noted above, by its plain language the Little Tucker Act permits the United States to be sued in federal district court under contract principles for money damages not

---

1. As already noted, Zajanckauskas also bases his Little Tucker Act counterclaim on an allegation that the United States violated his Fifth Amendment privilege against self-incrimination by filing these proceedings but that claim is, itself, dependent upon the alleged breach of contract and the constitutional ground need not, therefore, be considered for purposes of the pending motion. *Cf. Awad v. United States*, 301 F.3d 1367, 1372 (Fed.Cir. 2002) (finding tort claim based entirely upon breach of an agreement by the government a claim in contract rather than tort).

greater than $10,000. *See* 28 U.S.C. § 1346(a)(2); *see also Roberts v. United States*, 242 F.3d 1065, 1067–68 (Fed.Cir. 2001). The statute, therefore, clearly provides this Court with subject matter jurisdiction to entertain Zajanckauskas's counterclaim to the extent that he seeks no more than $10,000 in monetary damages because, as already determined, the counterclaim sufficiently states a claim for breach of contract.

### a. The Rule in *Kania*

■ Despite the plain language of the statute, the United States argues that a claim for money damages for the alleged breach of an agreement granting immunity in exchange for testimony may not be maintained under the Little Tucker Act unless the alleged agreement clearly and unmistakably subjects the government to monetary liability for any breach. That rule was first articulated, although not in so many words, by the United States Court of Claims (a predecessor court to the United States Court of Appeals for the Federal Circuit) in *Kania v. United States*, 227 Ct.Cl. 458, 650 F.2d 264 (1981). The Court held in *Kania* that the Tucker Act, 28 U.S.C. § 1491(a)(1), did not provide subject matter jurisdiction over a claim that the United States breached an agreement to grant immunity from prosecution in exchange for the plaintiff's testimony in a grand jury proceeding.[2] *Id.* at 267–69. The Federal Circuit recently reaffirmed that holding in *Sanders v. United States*, 252 F.3d 1329 (Fed.Cir.2001), which held that, under the Tucker Act, the lower court did not have subject matter jurisdiction over a claim that the United States

breached a bail agreement. *Sanders*, 252 F.3d at 1331. The *Sanders* Court interpreted the *Kania* decision as providing an exception to the rule against the exercise of subject matter jurisdiction if the alleged contract "clearly and unmistakably subjects the government to monetary liability for any breach." *Sanders*, 252 F.3d at 1335.

It is undisputed that the immunity agreement in this case does not clearly and unmistakably subject the government to monetary liability for any breach. Therefore, despite this Court's earlier determination that the plain language of the Little Tucker Act gives this Court subject matter jurisdiction over Zajanckauskas's counterclaim, the rule in *Kania* bars this Court from exercising such jurisdiction if the Letter is the kind of contract that is not cognizable under the Tucker Acts unless it "clearly and unmistakably subjects the government to monetary liability for any breach." *Sanders*, 252 F.3d at 1335.

The question before this Court is, therefore, to what kind of contract does the rule in *Kania* apply? There are two possible interpretations of that rule. Under the broad reading, which the United States urges, *Kania* applies to contracts to which the United States is a party in its capacity as a sovereign entity. Under the narrow reading of *Kania*, which Zajanckauskas prefers, the Tucker Acts waive the sovereign immunity of the United States over any contract to which it is a party unless the alleged contract arises out of and implicates the criminal justice system.

There is support in the case law for a broad reading of *Kania*. Beginning with

---

**2.** The substance of the Tucker Act is identical to that of Little Tucker Act and the parties agree (and this Court concurs) that the Acts should be construed as equivalents for the purpose of the pending motion. Moreover, Federal Circuit Court decisions with respect

to the Tucker Acts are binding on this Court. *See* 28 U.S.C. § 1295(a)(2) (providing for exclusive appellate jurisdiction in the Federal Circuit for cases, such as the one at bar, arising under the Little Tucker Act).

that case, the United States Court of Claims stated that the Tucker Act

> does not extend to every agreement, understanding, or compact which can semantically be stated in terms of offer and acceptance or meeting of minds [because the] Congress undoubtedly had in mind as the principal class of contract case in which it consented to be sued, the instances where the sovereign steps off the throne and engages in purchase and sale of goods, lands, and services, transactions such as private parties, individuals or corporations also engage in among themselves.

*Kania*, 650 F.2d at 268. That and similar language has been frequently repeated in lower Federal Circuit cases subsequent to *Kania*. *See, e.g., Sadeghi v. United States*, 46 Fed. Cl. 660, 663–64 (2000) (discussing cases).

### b. Treatment of *Kania* by the *Sanders* Court

The *Kania* decision and its progeny must be read in light of the Federal Circuit's most recent consideration thereof. As the United States argues, the Federal Circuit held in *Sanders* that the Tucker Act did not waive its sovereign immunity and thus did not extend to the court subject matter jurisdiction over a claim for money damages against the United States arising from an alleged breach of a bail agreement. *Sanders*, 252 F.3d at 1331. Although the Federal Circuit Court in *Sanders* relied heavily on *Kania, id.* at 1334–35, it conspicuously did not refer to the reliance in the earlier opinion on the sovereign/proprietor distinction. Indeed, the *Sanders* Court cited with approval the oft-quoted suggestion in the *Kania* opinion that

> [t]he contract liability which is enforceable under the Tucker Act consent to suit does not extend to every agreement, understanding, or compact which can se-

mantically be stated in terms of offer and acceptance or meeting of minds.

*Id.* at 1335 (quoting *Kania*, 650 F.2d at 268). The *Sanders* Court did not, however, mention the sovereign/proprietor rationale found in the very next sentence in *Kania*. Nor did it discuss the lower court's suggestion of a distinction between the bail agreement and a proprietary contract. *Id.* at 1333.

To the contrary, *Sanders* focused exclusively on the difference between civil and criminal contracts in which the United States is a party:

> It is no doubt also true that in the area of government contracts, as with private agreements, there is a presumption in the civil context that a damages remedy will be available upon the breach of an agreement. Indeed, as a plurality of the Supreme Court noted in *United States v. Winstar Corp.*, 518 U.S. 839, 116 S.Ct. 2432, 135 L.Ed.2d 964 (1996), "damages are always the default remedy for breach of contract." Although agreements that are in part civil and in part criminal may be governed by the presumption concerning the availability of damages in civil cases, a different rule obtains where the agreement is entirely concerned with the conduct of the parties in a criminal case.

*Sanders*, 252 F.3d at 1334 (citations and footnote omitted).

Not only did the Court in *Sanders* fail to mention the sovereign/proprietor distinction found in its earlier *Kania* opinion, but it also characterized that opinion as premised on the criminal/civil distinction:

> A decision of one of our predecessor courts, the Court of Claims, has previously established that in those circumstances ["where the agreement is entirely concerned with the conduct of the

parties in a criminal case"] a damages remedy is not ordinarily available.

*Id.* Indeed, the *Sanders* decision found support in *Kania* for the policy argument that, in light of the interest of the United States in administering the criminal justice system, it was

> particularly unreasonable to suppose that Congress in enacting the Tucker Act intended for this court to intervene in the delicate and sensitive business of conducting criminal trials.

*Sanders,* 252 F.3d at 1335–36 (quoting *Kania,* 650 F.2d at 269).

The Federal Circuit has, in *Sanders,* significantly recast the sovereign/proprietor distinction in *Kania* as a distinction between civil and criminal contracts to which the United States is a party. *Cf. Awad v. United States,* 301 F.3d 1367, 1374–75 (Fed.Cir.2002) (discussing *Sanders* treatment of *Kania* and remanding for lower court to determine whether witness protection agreement not arising in criminal context is enforceable under Tucker Act). Furthermore, the Supreme Court has recently failed to take issue with the Federal Circuit's exercise of subject matter jurisdiction to hear a Tucker Act claim against the United States. *See United States v. Winstar Corp.,* 518 U.S. 839, 116 S.Ct. 2432, 135 L.Ed.2d 964 (1996). The claim arose from a contract which it presumably entered into in its sovereign capacity that made no explicit provision for damages in the event of a breach. *See Winstar Corp.,* 518 U.S. at 864, 885–86, 116 S.Ct. 2432 (Souter, J., plurality opinion).

As illustrated in the cited case law, the sovereign/proprietor distinction relied upon so heavily by the Court in *Kania* seems to have lost its force in the intervening years. It now appears that the criminal/civil distinction has become *de rigueur.* Accordingly, this Court adopts the criminal/civil distinction as the appropriate way to distinguish between those contracts cognizable under the Tucker Acts as a matter of course (civil) and those cognizable only if they contain a clear and unmistakable statement subjecting the United States to monetary liability for any breach (criminal).

### c. The Texts of the Tucker Acts

Not only is the criminal/civil distinction more consistent with the characterization of *Kania* in the *Sanders* opinion, but also that distinction is more consistent with the texts of the Tucker Acts. In those statutes, Congress specifically waived the sovereign immunity of the United States in contract suits, thereby exposing itself to damages when it is found liable for breach of contract. *See* 28 U.S.C. §§ 1346(a)(2), 1491(a)(1). The statutory language draws no distinction between contracts to which the United States is a party as a sovereign and those to which it is a party as a proprietor. Moreover, neither the *Kania* opinion nor the United States in this proceeding points to legislative authority for that distinction.[3] Rather, the sovereign/proprietor distinction is based upon a supposition of what Congress "had in

---

3. It may be that immunity agreements were not considered "contracts" when the Tucker Acts were enacted and are, therefore, not "contracts" as contemplated by that statute. *Cf. Blessing v. Freestone,* 520 U.S. 329, 349–50, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997) (Scalia, J., concurring) (arguing that, because third-party beneficiaries could not enforce a contract when 42 U.S.C. § 1983 was enacted, § 1983 might not provide a private right of action for such individuals seeking to enforce federal-state funding and spending agreements today). The United States did not pursue that argument and this Court makes no inference with respect to it.

mind," rather than what it actually wrote into the statutes. *Kania*, 650 F.2d at 268.

Nor do the statutes differentiate between a contract that is silent as to the remedy for breach and one that "clearly and unmistakably subjects the government to monetary liability for any breach." *Sanders*, 252 F.3d at 1335. In *Kania*, however, the United States Court of Claims, by some stroke of insight into congressional intent that is not available to this Court, found that only the latter kind of contract is enforceable under the Tucker Acts.

Not only is that distinction unsupported by the statutory language but also it is inconsistent with other provisions of the Tucker Acts. Those Acts explicitly contemplate that "unliquidated damages" may be assessed against the United States. 28 U.S.C. §§ 1346(a)(2), 1491(a)(1). Such damages by their very nature are uncertain at the time of the making of a contract. The Tucker Acts also explicitly waive sovereign immunity in cases alleging an "implied contract." *Id.* Given such a broad waiver of immunity, it is incongruous to read the Tucker Acts as providing subject matter jurisdiction to the respective courts in breach of contract actions in which the United States is acting in its capacity as a sovereign *only* when damages are spelled out in the contract.

Of course, the criminal/civil distinction and the "clear and unmistakable" rule within that distinction are also inconsistent with the explicit language of the Tucker Acts. *Compare*, 28 U.S.C. §§ 1346(a)(2), 1491(a)(1) (waiving sovereign immunity in cases alleging an "implied contract"), *with Sanders*, 252 F.3d at 1336 (stating that monetary liability for agreements reached in criminal cases "should not be *implied*, and [can] exist only if there was an unmistakable promise to subject the United States to monetary liability" (emphasis

added)). Because the Circuit Court to which this Court is bound to defer has, however, found that a distinction should apply, the criminal/civil distinction is preferable to the sovereign/proprietor distinction because the former will encompass fewer contracts within its ambit, thereby causing less deviation from the express language of the Tucker Acts.

In summary, there is nothing that requires this Court to narrow the waiver of sovereign immunity by the United States any farther than the Federal Circuit already has. If the result seems contrived in light of what Congress "undoubtedly had in mind," this Court notes that it is up to Congress to make certain that the statutes it drafts reflect what it has in mind. As the United States Court of Claims held in an analogous case,

> in these situations (especially where the question of the waiver of sovereign immunity is involved) it is up to Congress to remedy this apparent harsh result, and the courts should refrain from legislating by judicial fiat.

*Keetz v. United States*, 168 Ct.Cl. 205, 207 (1964) (per curiam).

### d. The Letter Agreement

 It remains for this Court to determine whether the immunity agreement at issue arises in the criminal or civil context. As the United States admits, the immunity agreement did not arise in the context of the criminal justice system. In that agreement the United States agreed to hold Zajanckauskas immune from "any immigration proceeding" and "any government proceeding." The "proceeding" it now brings against Zajanckauskas is for denaturalization because he allegedly procured his citizenship illegally. *See* 8 U.S.C. § 1451(a). Denaturalization is decidedly not criminal in nature. *Schneiderman v. United States*, 320 U.S. 118, 160, 63 S.Ct.

1333, 87 L.Ed. 1796 (1943) ("A denaturalization suit is not a criminal proceeding."); cf. *Fong Yue Ting v. United States,* 149 U.S. 698, 730, 13 S.Ct. 1016, 37 L.Ed. 905 (1893) (holding the Fourth, Sixth and Eighth Amendments inapplicable to the deportation of aliens on the ground that "deportation is not a punishment for crime"), *cited with approval in Ingraham v. Wright,* 430 U.S. 651, 668, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977).

Indeed, the statute under which the United States seeks to denaturalize Zajanckauskas is contained within the portion of the United States Code dealing with aliens and nationality, 8 U.S.C. § 1 *et seq.,* not crimes and criminal procedure, 18 U.S.C. § 1 *et seq. See Smith v. Doe,* 538 U.S. 84, 123 S.Ct. 1140, 1148, 155 L.Ed.2d 164, 178 (2003) (relying on "attributes of legislative enactment, such as the manner of its codification" to determine whether a statutory scheme is criminal or civil in nature).

■ Because the alleged contract at issue did not arise in the criminal context, it is governed by civil contract principles under which the default remedy is money damages. *Sanders,* 252 F.3d at 1334 (citing *Winstar,* 518 U.S. at 885, 116 S.Ct. 2432); *see also McLaughlin,* 957 F.2d at 16. The rule in *Kania* and *Sanders* requiring a clear and unmistakable statement subjecting the United States to monetary liability for any breach does not, therefore, apply to Zajanckauskas's counterclaim and this Court has subject matter jurisdiction over that counterclaim pursuant to the Little Tucker Act to the extent that damages do not exceed $10,000. Whether Zajanckauskas will ultimately be entitled to any damages or to some kind of specific performance if he proves that the United States breached the alleged contract is, of course, a question for another day and will await resolution.

## ORDER

For the reasons set forth in the foregoing Memorandum, plaintiff's motion to dismiss defendant's amended counterclaim (Docket No. 7) is **DENIED.**

So ordered.