Meyer v. Seidel

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

- - - - - -

August Term, 2021

(Submitted:  April 13, 2022     Decided:  December 21, 2023)

Docket No. 21-2221

_____

RON MEYER,

*Plaintiff-Appellant*,

- v. -

SUSAN SEIDEL, SUSAN SEIDEL INC., JAMIE FRANKFORT[*],

*Defendants-Appellees*,

DOES 1 through 5,

*Defendants*.

_____

Before:  KEARSE, SULLIVAN, and ROBINSON, *Circuit Judges*.

---

[*]Although this defendant spells his name "Jaime Frankfurt," the caption on the operative complaint spells it "Jamie Frankfort," and we thus use the spelling "Frankfort" here and throughout this opinion, except in quotations in which it is spelled "Frankfurt."  *See generally Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 555 n.* (1980).  The Clerk's Office is directed to amend the official caption to conform with the above.

Appeal from a judgment of the United States District Court for the Southern District of New York, Vernon S. Broderick, *Judge*, dismissing plaintiff's 2019 complaint against defendants-appellees art dealers for fraud, negligent misrepresentation, breach of warranty, and rescission in connection with the 2001 purchase by plaintiff of an allegedly forged painting. The district court granted defendants' motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) on the ground that all of plaintiff's claims are barred by the applicable statutes of limitations, including any claims that did not accrue until plaintiff had sufficient notice to inquire into and discover them, holding that plaintiff had inquiry notice as early as 2011. The court also ruled that the complaint failed to state a fraud claim on which relief can be granted; and it denied plaintiff's request for leave to amend, ruling that amendment would be futile in light of the running of the statute of limitations. On appeal, plaintiff contends principally that the district court erred in relying on materials outside the complaint--and in drawing inferences against him from those materials-- to conclude that he was on inquiry notice as to the forgery more than two years prior to bringing this action; and given that that erroneous time-bar ruling was the basis for the court's denial of leave to amend the complaint on the ground of futility, plaintiff asks, if we find the complaint flawed, that we remand to permit him to file an amended complaint. We conclude (1) that the district court properly dismissed the

2

claims of negligent misrepresentation, breach of warranty, and rescission as time-barred, claims to which, under New York law, the discovery rule does not apply; and (2) that the complaint's pleading of the fraud claims did not meet the *Iqbal* standard. However, we conclude that in deciding these Rule 12(b)(6) motions, the district court erred in ruling that the fraud claims were time-barred on the ground that evidence beyond the complaint showed that Meyer had inquiry notice of those claims as early as 2011. And as that ruling was the basis for the court's conclusion that amendment to the complaint would be futile, we vacate so much of the judgment as denied plaintiff's request for leave to amend the complaint with respect to his claims of fraud. *See Meyer v. Seidel*, 2021 WL 3621695 (S.D.N.Y. Aug. 16, 2021).

Affirmed in part; vacated in part and remanded.

Judge Sullivan concurs in part and dissents in part, in a separate opinion.

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER, Los Angeles, California, (Bertram Fields, Los Angeles, California; Paula Howell Anderson, Shearman & Sterling, New York, New York, of counsel), *for Plaintiff-Appellant*.

GROSSMAN, New York, New York (Judd B. Grossman, New York, New York, of counsel), *for Defendants-Appellees Susan Seidel and Susan Seidel Inc.*

3

DONTZIN NAGY & FLEISSIG, New York, New York (Matthew S. Dontzin, David A. Fleissig, William H. LaGrange, New York, New York, of counsel), *for Defendant-Appellee Jamie Frankfort*.

KEARSE, *Circuit Judge*:

Plaintiff Ron Meyer appeals from a judgment of the United States District Court for the Southern District of New York, Vernon S. Broderick, *Judge*, dismissing his complaint filed in 2019 against defendants Susan Seidel and Susan Seidel Inc. (collectively "Seidel"), and Jamie Frankfort, who are dealers in paintings and other fine art, for fraud, negligent misrepresentation, breach of warranty, and rescission in connection with Meyer's purchase in 2001 of a painting that was represented to be the work of abstract-expressionist painter Mark Rothko but that is now believed to be a forgery. The district court granted defendants' motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) on the ground that all of Meyer's claims are barred by the applicable statutes of limitations, including any claims that did not accrue until he had sufficient notice to inquire into and discover them, holding that Meyer had inquiry notice as early as 2011. The court also ruled that the complaint's fraud allegations failed to meet the standards of Rule 12(b)(6) and Fed. R. Civ. P. 9(b); and it denied Meyer's request for leave to amend, ruling that amendment would be futile in light of the running of the statute of limitations. On appeal, Meyer contends

4

principally that the district court erred in relying on materials outside the complaint--and in drawing inferences against him from those materials--to conclude that his claims are time-barred because of inquiry notice as to the forgery more than two years prior to bringing this action; and given that that erroneous time-bar ruling was the basis for the court's denial of leave to amend the complaint on the ground of futility, Meyer asks, if we find the complaint flawed, that we remand to permit him to file an amended complaint.

We conclude (1) that the district court properly dismissed the claims of negligent misrepresentation, breach of warranty, and rescission as time-barred, claims to which, under New York law, the discovery rule does not apply; and (2) that the complaint's pleading of the fraud claims did not meet the standard set by *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ("*Iqbal*"). However, we conclude that in deciding these Rule 12(b)(6) motions, the district court erred in ruling that the fraud claims were time-barred on the ground that evidence beyond the complaint showed that Meyer had inquiry notice of those claims as early as 2011. And as that ruling was the basis for the court's conclusion that amendment to the complaint would be futile, we vacate so much of the judgment as denied Meyer's request for leave to amend the complaint with respect to his claims of fraud.

# I. BACKGROUND

This action was commenced by Meyer on October 15, 2019, in state court in California against Seidel and Frankfort, and against several "Does" who have not been identified and are not parties to this appeal. On the basis of diversity jurisdiction, upon representations that Meyer was a citizen of California, and that Seidel and Frankfort were citizens of New York, the action was removed by Seidel to the United States District Court for the Central District of California. Seidel and Frankfort then moved for dismissal of the action on the grounds of, *inter alia*, lack of personal jurisdiction or, in the alternative, for a change of venue. The California federal court granted the venue motions, transferring the action to the Southern District of New York.

A. *The Complaint*

Meyer's complaint, whose factual allegations are taken as true for purposes of motions to dismiss under Fed. R. Civ. P. 12(b)(6), alleged as follows.

> Seidel and Frankfort were dealers in paintings and other fine art who held themselves out as having expert and specialized knowledge and experience with respect to the evaluation and authenticity of works of art, including but not limited to the works of art they offered for sale.

(Complaint ¶ 2.)  Meyer was a California film industry executive (*see id*. ¶ 1); and "Frankfort and Seidel were well aware[ that Meyer] had no ability to distinguish an authentic work by Rothko from a 'forgery'" (*id*. ¶ 5).

On or about March 1, 2001, Frankfort, who was then an art dealer in California, informed Meyer that Seidel had for sale a painting by Rothko (the "Painting").  "Frankfort recommended Seidel to" Meyer as "a reliable and expert art dealer." (*Id*. ¶ 4.)  Meyer was "informed . . . that the Painting was owned by another art dealer who had consigned it to Seidel for sale." (*Id*.)  "With Frankfort's knowledge, Seidel offered to sell the Painting to [Meyer]." (*Id*. ¶ 5.)

6. To induce [Meyer] to purchase the Painting, and with the knowledge and approval of Frankfort, Seidel made the following false and material misrepresentations to [Meyer]:

a.  That the Painting was the work of Mark Rothko. In fact, as Seidel knew, or certainly should have known, no part of the Painting was the work of Rothko.  It was, in fact, a complete "forgery."

b.  That the Painting would be included in the Catalogue Raisonné of Rothko's works then being compiled, which meant to [Meyer], as it would to any reasonable person in [Meyer's] position, that the Painting had been accepted by experts on Rothko's work as a genuine work by Rothko.  In fact, as Seidel knew when she made this false representation, the Painting had never been accepted for inclusion in the Catalogue Raisonné of Mark Rothko's works.

c. That the Painting was actually signed by Mark Rothko and had been acquired directly from Rothko by the seller's family. In fact, as Seidel knew, the Painting was not acquired directly or indirectly from Rothko by the seller's family or by anyone else, and Rothko did not paint any part of it, never signed it or owned it, did not sell or transfer it to anyone and was entirely unaware of its existence.

7. At the time Seidel made the foregoing misrepresentations to [Meyer], defendants knew they were false and had no reasonable basis for believing that any such representation was true.

(Complaint ¶¶ 6-7.)

The complaint alleged that on or about March 1, 2001, in reasonable reliance on these misrepresentations by "Seidel, known to and approved by Frankfort," Meyer agreed to purchase the Painting for $900,000 plus a 5% commission of $45,000. (*Id*. ¶ 8.) Meyer paid the agreed sums and received the Painting in March 2001; he hung it in his home, where it remained until 2019.

11. In January, 2019, [Meyer] learned for the first time that, contrary to the representations of Seidel, known to and approved by Frankfort, the Painting is not, in any part, the work of Rothko, but is a total forgery, that it has essentially no value at all, that it had never been accepted for inclusion in the Rothko Catalogue Raisonné and that it had never been owned, possessed, signed or even seen by Rothko or acquired from Rothko by the seller or the seller's family or anyone else.

12. Defendants' misrepresentations and continuing concealment of the true facts, as alleged hereinabove, prevented [Meyer] from knowing, discovering or even suspecting until

January 2019 that defendants' representations were untrue and prevented [Meyer] from bringing any prior civil action based on the facts alleged herein.

(Complaint ¶¶ 11-12.)

The complaint alleged that if the Painting had been a real Rothko, its present value "would be at least $10 million. Since the Painting is not genuine, it has virtually no value and never will." (*Id*. ¶ 13.) The complaint sought damages against Seidel and Frankfort for fraud (first cause of action) and negligent misrepresentations (third cause of action), damages against Seidel for breach of warranty (second cause of action), and rescission from Seidel based on mistake (fourth cause of action).

B. *The Motions To Dismiss*

Seidel and Frankfort moved to dismiss the complaint pursuant to Rule 12(b)(6), principally arguing that as the complaint was filed in 2019 and the sale occurred in 2001, it revealed on its face that the action was commenced long past the expiration of the applicable statutes of limitations. Under New York law, which defendants contended should be applied, the statute of limitations for the warranty claim was four years; the statute of limitations for the negligent misrepresentation and rescission claims was six years.

While the limitations period for a fraud claim ends on the later of six years after the claim's accrual or two years after the plaintiff discovered or with reasonable diligence could have discovered his claims, defendants contended that Meyer with reasonable diligence could have discovered that the Painting was a forgery as early as 2011, causing the limitations period to end in 2013. In support of that contention, Seidel principally submitted a February 28, 2019 pre-lawsuit letter received from Meyer's attorneys which stated, *inter alia*, that Meyer had just discovered the forgery, and demanded that Seidel pay Meyer $10 million plus interest ("Meyer Demand Letter" or "Demand Letter"). But the Demand Letter (which Seidel had also filed with her California federal court motions for a change of venue or a dismissal for lack of personal jurisdiction) described a telephone call in 2011 in which Seidel "told [Meyer] about an investigation into a group of works by Mark Rothko." (Meyer Demand Letter at 4.)

Frankfort's motion likewise invoked that statement from the Demand Letter to contend that the limitations period on Meyer's fraud claim against him had ended in 2013. Frankfort also cited the existence of art-forgery lawsuits and attached copies of news reports from 2011 through mid-April 2017 that described ongoing art-fraud investigations into claims of forged works of modern artists including Rothko. He contended that the media coverage and lawsuits gave Meyer inquiry notice well

10

prior to October 15, 2017, two years before Meyer commenced this action. Defendants also argued, *inter alia*, that the complaint's allegations were too conclusory to state causes of action for fraud or negligent misrepresentation.

Meyer, in opposition to the motions for dismissal on statute-of-limitations grounds, pointed out that the Demand Letter on which defendants relied was "not in the complaint" (Meyer's opposition to Rule 12(b)(6) motion by Frankfort ("Meyer Opposition to Frankfort Motion") at 3). His memorandum proceeded to describe the contents of that call (*see id*.)--as did his response to Seidel's motion, in which he "offer[ed] to prove" the "facts regarding that" "2011 telephone call from Seidel" (Meyer's opposition to Rule 12(b)(6) motion by Seidel ("Meyer Opposition to Seidel Motion") at 3). He stated that Seidel had referred to an investigation into paintings sold by a different art dealer--not by Seidel; and Seidel had said that if the FBI had any question about the Painting bought by Meyer, the FBI would call him. Meyer said he was never contacted by the FBI; and he argued that the events of 2011 did not give him notice that the Rothko Painting he had bought from Seidel was a forgery. (*See id*. at 4, 14-17.)

Meyer also argued that the lawsuits and news reports proffered by Frankfort and Seidel were insufficient to show that he had inquiry notice that his Rothko Painting was a forgery prior to 2019. There was no evidence that he had seen

11

or been aware of those items. (*See id*. at 18-19.) Further, "nothing in the[ media reports presented by defendants] reported that either Seidel or Frankfurt had participated in selling any fake paintings or were accused of doing so." (Meyer Opposition to Frankfort Motion at 4; *see, e.g.,* Meyer Opposition to Seidel Motion at 19 ("[n]othing in the record indicates that" Seidel and Frankfort "were accused of anything prior to 2019").) Meyer maintained that, as alleged in the complaint, he did not learn that the Painting was a forgery until 2019. (*See, e.g.,* Meyer Opposition to Seidel Motion at 4, 19.)

Meyer argued that the court should apply California law, which by statute allows a claim based on fraud or mistake to be brought within three years after the plaintiff's discovery of the facts, *see* Cal. Code Civ. Proc. § 338(d); *see also Broberg v. The Guardian Life Insurance Company of America*, 171 Cal. App. 4th 912, 920, 90 Cal. Rptr. 3d 225, 231 (2d Dist. 2009) (same for claim of negligent misrepresentation). He argued also that the limitations period should be deemed tolled until 2019 when he actually learned that the Painting was a forgery, or that defendants should be equitably estopped from relying on the statute of limitations.

As to the substance of his allegations of fraud, Meyer contended that the complaint, originally filed in state court, was sufficient to meet the requirements of the Federal Rules of Civil Procedure. But he requested that, if the court found those

12

allegations insufficient, he be allowed to file an amended complaint to cure any defects.

C. *The District Court's Decision*

In an Opinion and Order dated August 16, 2021, the district court granted defendants' motions to dismiss. *See Meyer v. Seidel*, 20-CV-3536, 2021 WL 3621695 (S.D.N.Y. Aug. 16, 2021) ("D.Ct.Op."). Applying New York's choice-of-law rules, the court first considered whether there was any actual conflict between the relevant laws of California and New York and concluded that there was not. It saw no meaningful differences between those sets of laws as to the outcome of any of Meyer's four causes of action with regard to the statutes of limitations, the concepts of equitable tolling or equitable estoppel, or the elements of the claims. The court concluded that it would apply New York law. *See id*. at *7.

The court ruled that the limitations periods for Meyer's negligent-misrepresentation and mistake-based-rescission claims expired not later than six years (and for the warranty claim not later than four years) after Meyer bought the Painting. As to those claims New York has no time-of-discovery rule, and the statute had run long before the filing of Meyer's complaint in 2019. *See id*. at *5-*6, *9.

13

With respect to Meyer's fraud claims, the court ruled that the complaint was untimely because it was filed more than two years after Meyer with reasonable diligence could have discovered that the Painting was a forgery. As discussed more fully in Parts II.B.1.-3. below, with respect to the time-of-discovery issues the district court considered parts of the Meyer Demand Letter's description of Seidel's 2011 telephone call to Meyer; and it took judicial notice of the evidence submitted by defendants as to art-fraud lawsuits and news reports in 2011-2012. *See id*. at *7-*9. The court found that both the Demand Letter and the combination of lawsuits and media coverage were "independently sufficient to put Plaintiff on inquiry notice with regard to his fraud claims here," thereby making his "fraud claim[s] . . . untimely." *Id*. at *9. The court also found that Meyer proffered no evidence of wrongful acts by the defendants after his purchase of the Painting such as to warrant equitable tolling of, or equitable estoppel with respect to, the limitations period. *See id*.

The court further ruled that Meyer's fraud claims against Seidel and Frankfort were dismissable on the alternative ground that the complaint's allegations of knowledge were conclusory. As to Frankfort, the court stated that, aside from the allegation that Frankfort "had significant experience in the art world and recommended Seidel to plaintiff, representing to plaintiff that Seidel was a reliable

14

and expert art dealer who had for sale a painting by [Rothko]," the complaint's allegations that

> Frankfurt knew that Seidel offered to sell Plaintiff the Painting, that Frankfurt knew Plaintiff could not distinguish between an authentic and forged artwork, that Frankfurt knew Seidel made several misrepresentations about the Painting to Plaintiff and approved of that behavior, and that Frankfurt knew and approved of the sale and delivery of the Painting to Plaintiff, . . . [were] plainly conclusory and thus cannot satisfy the plausibility standard.

D.Ct.Op., 2021 WL 3621695, at *10 (internal quotation marks omitted). The court found that these allegations fell "well short of satisfying the standard set out in Rule 12(b)(6), let alone the heightened standard by Rule 9(b) for fraud claims. . . . Plaintiff does not allege facts that Frankfurt himself made any misrepresentations." *Id*. And as to Seidel, the court stated

> [p]ut simply, Plaintiff fails to provide any non-conclusory factual allegations that Seidel knew that the representations she allegedly made to Plaintiff about the Painting were false. . . . As with his allegations regarding Frankfurt, Plaintiff provides only conclusory allegations that Seidel knew that the Painting had not been accepted for inclusion for Rothko's Catalogue Raisonné, had not been signed by Rothko, and had not been acquired from Rothko's family, (Compl. ¶¶ 6-7), detailing no specific factual allegations to support these claims. It is insufficient for Plaintiff to argue, by virtue of Seidel's "expertise and experience" alone, (*id*. ¶ 5), that Seidel must have known her representations were false when she made them . . . .

*Id*. at *11 (other internal quotation marks omitted).

15

Finally, noting Meyer's request for leave to file an amended complaint if the original complaint were found insufficient, the court denied that request and dismissed the case with prejudice. It stated, "I find any amendment from Plaintiff would be futile because [Plaintiff's] claims would be time-barred even if such an amendment were allowed." *Id*. (internal quotation marks omitted).

## II. DISCUSSION

On appeal, Meyer contends (1) that the district court "erred in concluding, as a matter of law, that [he] was on inquiry notice of the alleged fraud as of 2011 and consequently," that it erred in concluding "that [his] causes of action for fraud, breach of warranty, negligent misrepresentation, and rescission are time-barred"; and (2) that the court "erred in denying [his] request to amend the complaint, based on its conclusion that any such amendment would be futile." (Meyer initial brief on appeal (or "Initial Brief") at 2.) We review the district court's grant of a motion to dismiss pursuant to Rule 12(b)(6) *de novo*. *See*, *e.g.*, *Staehr v. Hartford Financial Services Group, Inc.*, 547 F.3d 406, 424 (2d Cir. 2008) ("*Staehr*"). For the reasons that follow, we agree with Meyer insofar as his claims of fraud are concerned.

Preliminarily, we note that in his reply brief, Meyer also introduces the suggestion that the district court erred in looking to New York law rather than California law to determine the timeliness of his claims. (*See*, *e.g.*, Meyer reply brief on appeal ("Reply Brief") at 17 ("California law does not support the district court's decision" (capitalization omitted).) Meyer argues that he did not "concede[]" in his original brief that New York law applied. (*Id*.) But with or without an explicit concession, an issue raised for the first time only in a reply brief has been waived, *see, e.g.*, *Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir.), *cert. denied*, 525 U.S. 1001 (1998). This principle also applies to an argument that, in the party's initial brief, is made only perfunctorily or is "unaccompanied by some effort at developed argumentation," *Tolbert v. Queens College*, 242 F.3d 58, 75 (2d Cir. 2001) (internal quotation marks omitted).

Here, at no point in his initial brief on appeal did Meyer challenge the district court's decision to apply New York law. He did not identify a choice-of-law issue for appeal, did not explain how the district court may have erred in its choice-of-law analysis, and did not argue that New York law should not apply. Instead, Meyer argued only that his claims were both timely and viable under either California or New York law. (*See*, *e.g.*, Initial Brief at 25 ("Neither California nor New York law supports the district court's decision" (capitalization omitted)); *id*. ("Meyer's

17

claims are not barred by the passage of time. That is true under both California and New York law"); *id*. at 29 ("even under New York law, Seidel and Frankfurt would be liable").) We see no reason to entertain Meyer's argument, advanced for the first time in his Reply Brief, that the district court erred in applying New York law rather than California law. We address the district court's treatment of those claims under New York law.

A. *Breach of Warranty, Negligent Misrepresentation, & Rescission*

The dismissals of Meyer's claims of breach of warranty, negligent misrepresentation, and rescission (respectively his second, third, and forth causes of action) do not require extended discussion. The statutes of limitations governing these three categories of claims do not contain discovery or inquiry-notice provisions extending the time to sue.

Under New York law, a claim for breach of warranty, to be timely, must be "commenced within four years after the cause of action has accrued." N.Y. U.C.C. Law § 2-725(1); *see Ito v. Dryvit Systems, Inc.*, 16 A.D.3d 554, 555, 792 N.Y.S.2d 516, 517 (2d Dep't 2005). As pertinent here, the "breach of warranty occurs when tender of delivery is made . . . ." N.Y. U.C.C. Law § 2-725(2). "A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the

18

breach." *Id*. There is no provision for an extension of the limitations period linked to the discovery of the breach. As the Painting was delivered to Meyer in March 2001, the four-year period applicable to his cause of action for breach of warranty (his second cause of action) expired in March 2005.

As to a claim of negligent misrepresentation, New York law makes no express provision for a limitations period. Such a claim, when it rests on a theory akin to fraud, is subject to the catch-all limitations period provided in N.Y. C.P.L.R. § 213(1), which is six years. *See, e.g., Fandy Corp. v. Lung-Fong Chen*, 262 A.D.2d 352, 352-53, 691 N.Y.S.2d 572, 573 (2d Dep't 1999). Any negligent misrepresentations in this case, so far as appeared from the complaint, occurred in or prior to Meyer's purchase of the Painting in March 2001. New York law does not provide a discovery-based extension of the limitations period for a claim of negligent misrepresentation. *See id*. at 353, 691 N.Y.S.2d at 573. Thus, Meyer's third cause of action became untimely in March 2007.

Meyer's fourth cause of action sought rescission of the purchase transaction and the return of the sums he paid, with interest, on the theory of mistake. It alleged that "there existed, at the very least, a mutual mistake of fact by plaintiff known, or which should have been known to Seidel . . . concerning the authenticity, authorship and prior ownership of the Painting and its supposed acceptance for

19

inclusion in the Catalogue Raisonné of Mark Rothko's works." (Complaint ¶ 25.) A claim for rescission based on mistake is to be brought within six years, *see* N.Y. C.P.L.R. § 213(6); and the limitations period "runs from the date of the alleged mistake or actionable wrong." *Prand Corp. v. County of Suffolk*, 62 A.D.3d 681, 682, 878 N.Y.S.2d 198, 200 (2d Dep't 2009). New York law does not provide a discovery-based extension of the limitations period with respect to a claim for mistake. *See, e.g., National Amusements, Inc. v. South Bronx Development Corp.*, 253 A.D.2d 358, 358-59, 676 N.Y.S.2d 166, 166 (1st Dep't 1998) ("claim of mistake" is "not subject to a discovery accrual"). Meyer's cause of action for rescission became untimely in March 2007.

In sum, as to each of Meyer's claims other than fraud, New York law has a fixed period for commencement of suit following the claim's accrual, without an extension relating to the time at which the claim was or could reasonably have been discovered.

Meyer argues that those claims should nonetheless be found timely based on theories of equitable tolling and equitable estoppel. (*See, e.g.,* Initial Brief at 27 ("Equitably, Meyer's time to file the claims now before the court did not begin to run until 2019, when he first discovered the truth, and he should not be barred by any prior passage of time.").) We see no applicability of these principles to Meyer's claims of breach of warranty, negligent misrepresentation, and rescission.

20

"Under New York law, the doctrines of equitable tolling or equitable estoppel 'may be invoked to defeat a statute of limitations defense when the plaintiff was induced by fraud, misrepresentations or deception *to refrain from filing a timely action.*'" *Abbas v. Dixon*, 480 F.3d 636, 642 (2d Cir. 2007) (quoting *Doe v. Holy See (State of Vatican City)*, 17 A.D.3d 793, 794, 793 N.Y.S.2d 565, 568 (3d Dep't 2005) (emphasis ours)). For these doctrines to apply, "a plaintiff may not rely on the same act that forms the basis for the claim--the later fraudulent misrepresentation must be for the purpose of concealing the former tort." *Ross v. Louise Wise Services, Inc.*, 8 N.Y.3d 478, 491, 836 N.Y.S.2d 509, 517-18 (2007). "[M]ere silence or failure to disclose the wrongdoing is insufficient." *Id.*, 836 N.Y.S.2d at 518 (internal quotation marks omitted).

Meyer has alleged misrepresentations by defendants only before his purchase of the Painting, to which equitable tolling and equitable estoppel concepts do not apply. And while he suggests that equitable estoppel may apply to the 2011 call from Seidel (*see* Demand Letter at 1 (stating that Seidel in the "2011 [call] . . . intentionally minimized the concerns about the Painting's authenticity")), that call occurred years after the limitations periods for Meyer's claims other than fraud had ended. Equitable estoppel does not revive a limitations period that has already expired. *See, e.g., Koch v. Christie's Int'l PLC*, 699 F.3d 141, 157 (2d Cir. 2012) ("*Koch*")

21

(a "tolling period cannot delay the expiration of a deadline when that deadline has already expired" (internal quotation marks omitted)).

We conclude that the district court properly dismissed with prejudice Meyer's causes of action for breach of warranty, negligent misrepresentation, and rescission as time-barred.

B. *The Fraud Claims*

Under New York law, for a claim "based upon fraud[,] the time within which the action must be commenced shall be the greater of six years from the date the cause of action accrued or two years from the time the plaintiff . . . discovered the fraud, or could with reasonable diligence have discovered it." N.Y. C.P.L.R. § 213(8). "The inquiry as to whether a plaintiff could, with reasonable diligence, have discovered the fraud turns on whether the plaintiff was 'possessed of knowledge of facts from which [the fraud] could be reasonably inferred.'" *Sargiss v. Magarelli*, 12 N.Y.3d 527, 532, 881 N.Y.S.2d 651, 654 (2009) ("*Sargiss*") (quoting *Erbe v. Lincoln Rochester Trust Co.*, 3 N.Y.2d 321, 326, 165 N.Y.S.2d 107, 111 (1957) ("*Erbe*")).

As set out in greater detail in Part II.B.2. below, the test for whether a fraud claimant had notice sufficient to create a duty of inquiry is an objective one. *See, e.g., Staehr*, 547 F.3d at 427; *Cruden v. Bank of N.Y.*, 957 F.2d 961, 973 (2d Cir. 1992)

22

("*Cruden*"). The district court noted that the "'objective determination'" as to "'[w]hether a plaintiff was placed on inquiry notice . . . . can be resolved as a matter of law,'" and "'need not be made by a trier of fact,'" D.Ct.Op., 2021 WL 3621695, at *7 (quoting *Staehr*, 547 F.3d at 427); but "determining whether a plaintiff had sufficient facts to place her on inquiry notice" would be "inappropriate for resolution on a motion to dismiss" unless the fact that "a reasonable plaintiff of ordinary intelligence would have been aware of the existence of fraud can be gleaned from the complaint and papers integral to the complaint," D.Ct.Op., 2021 WL 3621695, at *7 (internal quotation marks omitted). The court found that Meyer "could have, with reasonable diligence, discovered facts that would have allowed him to bring his claims in 2011," which was "fatal for [his] fraud claim," *id.*, based on information from either of two sources.

The first source was the telephone call Meyer received from Seidel, as described in the Demand Letter (or "Letter"). The court stated that in the Letter, Meyer's attorney said that Meyer in 2011 had

> received a phone call from the dealer who sold him the Painting to inform him that the FBI was investigating several Rothko forgeries, and that Plaintiff himself might receive a call from the FBI in connection with this investigation.

23

D.Ct.Op., 2021 WL 3621695, at *8. The court noted that Meyer "argue[d] that several aspects of the phone call, as reported by his attorney, suggested that Plaintiff's painting was not a forgery," including that "Seidel never said that Plaintiff's painting was a forgery, Seidel stated that Plaintiff would get a call from the FBI only 'if there was an issue with the painting,' and Plaintiff never received such a call." *Id*. (quoting Demand Letter at 4). The court said that it was "[a]ssuming this all to be true" as required in ruling on motions under Rule 12(b)(6). D.Ct.Op., 2021 WL 3621695, at *8.

Nonetheless, the court concluded, "I find that this [2011] phone call alone was sufficient" to "suggest to a person acting with reasonable diligence that there was *some* 'probability that he has been defrauded,' which prompts a 'duty of inquiry.'" *Id*. (quoting *Cruden*, 957 F.2d at 973 (emphasis added)). It stated that

> inquiry notice . . . does not require Plaintiff to have decisive or actual knowledge of the full extent of the fraud. Rather, *Plaintiff must merely have enough information to warrant an investigation . . .*; indeed, *Plaintiff needed to have only "the probability* that he has been defrauded," *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 155 (2d Cir. 2012) (internal quotation marks omitted). I find that Plaintiff learning about an FBI investigation into several forgeries related to Rothko directly from the dealer who sold him the Painting, and with at least *some reference* to Plaintiff's exact painting--that the FBI *might* call--is sufficient to meet this standard for inquiry notice.

D.Ct.Op., 2021 WL 3621695, at *8 (other internal quotation marks omitted (emphases ours)).

24

The second source from which the district court found Meyer to have been on inquiry notice in 2011 was

> court filings and news reports concerning a slew of lawsuits brought in [the Southern] District [of New York] between 2011-2015 *against the now-defunct Knoedler Gallery and connected dealers*, alleging that the gallery sold forged works of art, including Rothko paintings. . . .

D.Ct.Op., 2021 WL 3621695, at *8 (emphasis added). The court found it appropriate to take judicial notice of these lawsuits and news reports, as requested by defendants, and to consider them

> not for their truth, but in connection with [the court's] analysis of whether they put Plaintiff on sufficient inquiry notice. . . . "[I]t is proper to take judicial notice of the *fact* that press coverage [or] prior lawsuits . . . contained certain information, without regard to the truth of their contents, in deciding whether so-called 'storm warnings' were adequate to trigger inquiry notice . . . ."

*Id*. (quoting *Staehr*, 547 F.3d at 425 (emphasis in *Staehr*)).

While noting that "the lawsuits and news reports d[id] not draw a clear connection between Defendants and the Knoedler Gallery, and that none of the lawsuits or reports accuse[d] any of the Defendants here of fraud," the court found that they were nonetheless "sufficient on their own to put Plaintiff on notice to investigate whether or not his Rothko painting was a forgery," D.Ct.Op., 2021 WL 3621695, at *9, for "five reasons":

25

First, news reports are particularly likely to "trigger inquiry notice" when the reports, as here, "appeared prominently in popular and widely read publications such as" the New York Times and Vanity Fair. *Staehr*, 547 F.3d at 429. Second, several of the lawsuits and news reports, including both New York Times reports published in 2011, specifically mention Rothko by name. Third, Frankfurt is mentioned extensively in the Vanity Fair article published in early 2012. Fourth, several of the lawsuits and news articles allege that the sellers of the paintings represented to the buyer that they had acquired the artwork directly from the family of the artist in question, including Rothko, just as Plaintiff has alleged here, (Compl. ¶ 6(c)). Fifth, defendants in one of the 2011 lawsuits allegedly represented that the piece of artwork at issue would be included in the artist's Catalogue Raisonné, as Plaintiff has also alleged here, (Compl. ¶ 6(b)). As such, not only were Rothko and Frankfurt explicitly mentioned in these litigation materials and prominent news reports, there were significant factual similarities between the misrepresentations alleged in those lawsuits and reports and the misrepresentations Plaintiff alleges here.

D.Ct.Op., 2021 WL 3621695, at *9 (other record citations omitted).

Meyer contends that the district court erred, first in considering the Demand Letter, lawsuits, and media reports at all on motions to dismiss under Rule 12(b)(6), and second in concluding that those materials showed that Meyer had inquiry notice in 2011 (or at any time prior to October 15, 2017) that the Rothko Painting he had bought was a forgery. We agree that the district court's rulings were erroneous, although we view the inappropriate procedure as having been largely invited by Meyer.

1. *The Flawed Procedure*

Meyer on appeal criticizes the district court for "bas[ing] its dismissal not on the complaint itself, but on two matters of which it took judicial notice, matters that were neither referenced, nor incorporated, nor relied upon in the complaint" (Meyer Initial Brief at 4-5), including consideration of the Demand Letter which was "not in the complaint" (*id*. at 7). He points out that the materials beyond the complaint "w[ere] the only 'evidence' cited by the District Court in support of its judgment ending Meyer's case against Frankfurt." (*Id*. at 25.) Ordinarily, we would agree that the court could not properly consider materials such as the Demand Letter on a Rule 12(b)(6) motion, and that it was required to convert that motion into one for summary judgment, *see, e.g.*, *Staehr*, 547 F.3d at 425; *Nakahata v. New York-Presbyterian Healthcare System, Inc.*, 723 F.3d 192, 198 (2d Cir. 2013) ("the conversion of a Rule 12(b)(6) motion into one for summary judgment under Rule 56 when the court considers matters outside the pleadings is strictly enforce[d] and mandatory" (internal quotation marks omitted)). And in most cases, where such materials are proffered by defendants, the plaintiff urges the district court not to consider such matters without converting the motion to one for summary judgment. Not so here.

In this case, the district court felt authorized to consider the Demand Letter, in part because it "note[d] that neither party appears to challenge using this

letter in their papers related to the motion before me." D.Ct.Op., 2021 WL 3621695, at *7 n.6. While, as indicated in the above paragraph, Meyer complains on appeal that the court went beyond the complaint, he does not challenge the court's statement that no one protested. His current criticisms are not accompanied by any citations to the record to show that he objected to the court's consideration of the Demand Letter and the 2011 call. And our own review of the record has turned up only a fragment of one sentence that mentioned to the district court that the 2011 call was not part of the complaint. (*See* Meyer Opposition to Frankfort Motion at 3 ("Defendants now rely on a telephone call from Seidel to plaintiff that is not in the complaint.").) Rather than calling the court's attention to the proper procedures, Meyer simply launched his version of the contents of the 2011 call in his memorandum (*see id*.) and thereafter "offer[ed] to prove" what was said during that call (Meyer Opposition to Seidel Motion at 3). The court's view that Meyer did not object to its consideration of the Demand Letter was justified.

We note however, that the court also found, principally citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) ("*Chambers*"), that it was, "[i]n any event," authorized

> in deciding a Rule 12(b)(6) motion, . . . [to] consider "documents either in plaintiff['s] possession or of which

plaintiff[] had knowledge and relied on in bringing suit." *Chambers*, 282 F.3d at 153 (internal quotation marks omitted). . . . Given that *Plaintiff's counsel wrote and sent this letter*, Plaintiff had "actual notice" of the letter before Defendants filed it in this litigation, thus "dissipat[ing]" any potential risk of prejudice to Plaintiff in my relying on it in this decision. *Chambers*, 282 F.3d at 153 (internal quotation marks omitted). This is particularly true here, where both *Defendants . . . and [the California District Judge] . . . relied on the letter without objection from Plaintiff in prior briefing before the District Court for the District of Central California.*

D.Ct.Op., 2021 WL 3621695, at *7 n.6 (emphases added). We find both of these rationales flawed.

As to the latter, it is true that Seidel submitted the Letter to the California federal court; but in that court Seidel was not moving to dismiss the complaint for failure to state a claim. Rather her two motions were (1) for dismissal pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction, and (2) for a change of venue pursuant to 28 U.S.C. § 1404(a) ("convenience of parties and witnesses")--grounds that are collateral to the viability of the asserted claims and that frequently force the court to consider facts that do not appear on the face of the complaint. *See, e.g., CutCo Industries, Inc. v. Naughton*, 806 F.2d 361, 364-65 (2d Cir. 1986) (conflicting contentions with respect to personal jurisdiction may be resolved after a hearing "upon papers or by a proceeding in which evidence is

29

taken").  And while Frankfort in California added a motion to dismiss the complaint for failure to state a claim against him, the California court did not rule on that motion.  It simply granted the motions to transfer the action to the Southern District of New York; its sole mention of the Demand Letter was its observation, in applying venue transfer principles, that the Letter indicated that the art-forgery ring was centered in New York.  The fact that the Demand Letter was submitted in California--in support of motions other than dismissal of the complaint for failure to state a cause of action--did not authorize the district court here to consider the Letter in ruling on the Rule 12(b)(6) motions.

We also view the court's reliance on *Chambers* as misconceived.  While the district court may consider, on a Rule 12(b)(6) motion, documents "of which plaintiffs had knowledge and relied on in bringing suit," *Chambers*, 282 F.3d at 153, we stressed in *Chambers* itself that a plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a *necessary prerequisite* to the court's consideration of the document on a dismissal motion; *mere notice or possession is not enough*.  *Id.*  (first emphasis in original; other emphases ours).  The complaint itself did not refer to or in any way rely on the Demand Letter.  The fact that Meyer's attorney had written it did not make it part of the complaint.

Notwithstanding the fact that Meyer did not preserve a procedural objection to the court's consideration of the Demand Letter and the 2011 call, which were in no way referred to or relied on by the complaint, neither the call nor the other materials considered by the court sufficed to meet the standard for concluding that Meyer had inquiry notice in 2011.

2. *Principles Governing Inquiry Notice*

In order to conclude that a plaintiff had inquiry notice, a finding that he had a "'mere suspicion'" of fraud is "'not . . . sufficient,'" *Sargiss*, 12 N.Y.3d at 532, 881 N.Y.S.2d at 654 (quoting *Erbe*, 3 N.Y.2d at 326, 165 N.Y.S.2d at 111). A duty to inquire arises when the circumstances "would 'suggest to a person of ordinary intelligence *the probability* that he has been defrauded.'" *Cruden*, 957 F.2d at 973 (quoting *Armstrong v. McAlpin*, 699 F.2d 79, 88 (2d Cir. 1983) ("*Armstrong*") (which was quoting *Higgins v. Crouse*, 147 N.Y. 411, 416, 42 N.E. 6, 7 (1895) ("*Higgins*")) (emphasis ours)); *see, e.g.*, *Koch*, 699 F.3d at 151 n.3 (the duty arises when "a person of ordinary intelligence would consider it 'probable' that fraud had occurred").

> Since the Second Circuit follows the objective
> standard for inquiry notice, the information provided
> must trigger notice with sufficient storm warnings to

31

alert a reasonable person to *the probability* that there were either misleading statements or significant omissions . . . .

*Newman v. Warnaco Group, Inc.*, 335 F.3d 187, 193 (2d Cir. 2003) ("*Newman*") (emphasis added); *see, e.g., Dodds v. Cigna Securities, Inc.*, 12 F.3d 346, 350 (2d Cir. 1993) (the circumstances must suggest the "probability" that the plaintiff was defrauded), *cert. denied*, 511 U.S. 1019 (1994).

To constitute inquiry notice, "[t]he fraud must be probable, not merely possible." *Newman*, 335 F.3d at 193; *see, e.g., Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 168 (2d Cir.) ("*Lentell*") ("existence of fraud must be a probability, not a possibility" (internal quotation marks omitted)), *cert. denied*, 546 U.S. 935 (2005); *Koch*, 699 F.3d at 151 n.3 ("probable, not simply possible"); *Staehr*, 547 F.3d at 430 (the test is "the probability," "not just the possibility"). Unaccompanied by a modifier, the word "probable" means "more likely than not." *Citibank, N.A. v. Brigade Capital Management, LP*, 49 F.4th 42, 68 n.17 (2d Cir. 2022).

The rationale for requiring probability rather than merely possibility is that "'the applicable statute of limitations should not precipitate groundless or premature suits by requiring plaintiffs to file suit before they can discover with the exercise of reasonable diligence the necessary facts to support their claims.'" *Lentell*, 396 F.3d at 168 (quoting *Rothman v. Gregor*, 220 F.3d 81, 97 (2d Cir. 2000)

32

(other internal quotation marks omitted)). "Knowledge of the facts which aroused plaintiff['s] suspicions as to the defendant['s]" honesty "[i]s not necessarily knowledge of facts from which the alleged fraud[] . . . might be reasonably inferred." *Erbe*, 3 N.Y.2d at 326, 165 N.Y.S.2d at 111. In assessing whether publicly available news and other reports put a plaintiff on inquiry notice, courts consider the ubiquity of the reports, and their content. With respect to the first factor, courts consider whether news reports are sufficiently widespread that we can infer that a reasonable plaintiff would be aware of the reports. *See, e.g., Staehr*, 547 F.3d at 427 ("It is unremarkable that courts consider the extent of media coverage in deciding when inquiry notice . . . was triggered."); *see also id.* at 431 ("we cannot say . . . that this article would have come to the attention of a reasonable investor of ordinary intelligence").

For similar reasons, even an article that has come to the plaintiff's attention is not sufficient to provide inquiry notice unless "its contents were sufficient to place [him] on notice of the probability of fraudulent conduct by [the defendant]." Id. In order to provide inquiry notice, "[t]he triggering . . . data must be such that it relates *directly* to the misrepresentations and omissions the Plaintiffs later allege in their action *against the defendants*." *Newman*, 335 F.3d at 193 (emphases added); *see, e.g., Staehr*, 547 F.3d at 427 (same); *Cohen v. S.A.C. Trading*

33

*Corp.*, 711 F.3d 353, 361 (2d Cir. 2013) ("*Cohen*") (same). Thus, in deciding a Rule 12(b)(6) motion asserting that the plaintiff's claim is time-barred based on inquiry notice from news reports, the district court cannot properly "dr[a]w *factual inferences that were not clearly demonstrated by the press accounts*. Such inferences are not appropriately drawn on a motion to dismiss." *Staehr*, 547 F.3d at 430 (emphasis added). For example, if news reports proffered by the defendant to show inquiry notice barely mentioned the defendant in a way that was either accusatory or directly related to the plaintiff's claims, a court could not properly find as a matter of law that those reports had given the plaintiff a duty to inquire further. *See generally id*. at 434 (a lawsuit that "briefly mention[ed] the [defendant's] name *but d[id] not specifically accuse it of wrongdoing*, let alone *the wrongdoing that [wa]s the subject of this action*" did not put the plaintiff on inquiry notice (emphases added)).

In sum, to be adequate to trigger the duty of inquiry, the circumstances must suggest to a person of ordinary intelligence that it is probable- -*i.e.*, more likely than not--and not merely possible, that (a) he has been defrauded (b) by the defendant.

3. *The District Court's Lower Standard & the Deficient Record*

Our *de novo* review of the district court's decision and the record on which it was based persuades us that the court did not apply the standard described above, either as to probability or directness. And under the proper standard, on the record as it stands the court's findings of inquiry notice are untenable.

Although at the outset of its discussion of inquiry notice the district court noted that the standard to be applied was an objective one, and it noted that it could make the determination as a matter of law if there were no disputed facts, the court did not proceed to identify the elements of the standard. After describing the 2011 call, the court proceeded directly to its conclusion, finding, as discussed above "that this phone call alone was sufficient" to "suggest to a person acting with reasonable diligence that there was *some* 'probability that he has been defrauded,' which prompts a 'duty of inquiry.'" D.Ct.Op., 2021 WL 3621695, at *8 (quoting *Cruden*, 957 F.2d at 973 (emphasis added)).

But *Cruden* itself and the precedents it applied stated that, to warrant a finding of inquiry notice, the circumstances must have suggested to the plaintiff "the" probability--not merely "some" probability--that he had been defrauded. *See Cruden*, 957 F.2d at 973 ("the probability" (internal quotation marks omitted));

*Armstrong*, 699 F.2d at 88 ("the probability" (internal quotation marks omitted));

*Higgins*, 147 N.Y. at 416, 42 N.E. at 7 ("the probability")). "[S]ome probability" is not the equivalent of "the probability"; the "some" modifier suggests a standard less exacting than the more-likely-than-not level.

At no point did the district court state that either set of circumstances on which it relied suggested that the Painting Meyer had bought was more likely than not a forgery. And its conclusion that the 2011 call should have suggested to Meyer "that there was *some* 'probability that he ha[d] been defrauded,'" D.Ct.Op., 2021 WL 3621695, at *8 (quoting *Cruden*, 957 F.2d at 973 (emphasis added)), showed that the court held Meyer to have had inquiry notice by using a standard lower than the required standard of more-likely-than-not.

Further, the findings made by the court cannot support the conclusion of inquiry notice under the proper standard. Of course, because there was no sworn evidence in this case from anyone who was a party to the 2011 call (and even if there had been such evidence, at that stage of the district court proceeding there could not appropriately have been factfinding), one cannot know exactly what Seidel said in the 2011 call. Thus the district court was relegated to noting only that there was "at least *some reference* to Plaintiff's exact painting," a reference that--as the court was assuming the truth of Meyer's description of the 2011 call--

36

"*never* said that Plaintiff's painting was a forgery."  D.Ct.Op., 2021 WL 3621695, at *8 (emphases added).  And the court described Seidel as having said that "Plaintiff himself *might* receive a call from the FBI," *i.e.*, "that the FBI *might* call."  *Id*. (emphases added).

These findings cannot support a finding that Meyer had inquiry notice on the basis of the Demand Letter.  Hearing "some reference" that was "n[ot] . . . forgery" does not suggest to a person of ordinary intelligence the probability of forgery.  And hearing that the FBI "might" call--which was consistent with the Demand Letter's statement that Meyer was told that he would receive a call from the FBI "if" there was an issue with the Painting--does not even suggest that the FBI would probably call, much less suggest that the Painting was more likely than not a forgery.

Nor did the second basis for the district court's ruling that Meyer had inquiry notice--lawsuits and media coverage of forged artworks--meet the standards of probability and directness.  While it may have been permissible for the court to take judicial notice of those items, *see, e.g.*, *Staehr*, 547 F.3d at 425, the relevance of such judicially noticed materials depends in large part on whether we can infer that Meyer was aware of them--and on their contents, which in this case did not "clearly demonstrate[]" the "factual inferences" drawn, *id*. at 430.

37

First, none of those materials suggested that all, or even most, of the paintings sold as Rothkos during the period discussed were probably forgeries. For example, the report that there were "roughly 20 paintings with the same sketchy backstory," Michael Shnayerson, *A Question of Provenance*, Vanity Fair, May 2012, at 111, 112, would not suggest to a person of ordinary intelligence that every other sale--or any other particular sale--was probably fraudulent.

Second, in the *materials* submitted by defendants, a half-dozen persons or entities accused of participating in the art-fraud enterprise were mentioned, including Knoedler Gallery (or "Knoedler") and its president Ann Freedman, *see, e.g.*, Patricia Cohen, *Hearings Shed Light on Pollock Dispute*, N.Y. Times (Dec. 16, 2011), https://www.nytimes.com/2011/12/17/arts/design/hearings-shed-light-on-dispute-over-authenticity-of-pollocks.html; art dealer Glafira Rosales, who brought Freedman "such dazzling, newly discovered pictures," Michael Shnayerson, *A Question of Provenance*, Vanity Fair, May 2012, at 111, 118 and Rosales's companion José Carlos Bergantiños, *see id.*, who was alleged--with Rosales, Knoedler, Freedman, and others--to have "knowingly brought . . . forged artworks into the market," De Sole v. Knoedler Gallery, LLC, No. 12 Civ. 2313 (Amended Complaint ¶ 166; see id. ¶¶ 162-166) [A.421]. But the district court itself stated that "the lawsuits and news reports *d[id] not* draw a clear connection

38

between Defendants"--*i.e.*, Seidel and Frankfort--"and the Knoedler Gallery,"

D.Ct.Op., 2021 WL 3621695, at *9 (emphasis added); nor do we see such a

connection drawn between defendants and the other persons mentioned in the

articles as culpable in the art frauds. Indeed, in the submitted materials, we see no

mention of Seidel at all.

As quoted above, the district court stated that it saw five reasons to

find that the lawsuits and media reports placed Meyer on inquiry notice. But as

the court had expressly noted,

> "[w]ith respect to inquiry notice, a duty to inquire is triggered
> by information that *relates directly to* the misrepresentations and
> omissions the Plaintiffs later allege in their action against *the*
> *defendants*."

D.Ct.Op., 2021 WL 3621695, at *7 (quoting *Cohen*, 711 F.3d at 361 (emphases ours)).

While four of the court's reasons (numbers 1, 2, 4, and 5) refer to aspects of the

materials that might well be appropriate to consider in assessing notice (*i.e.*, the

extent of the publicity, the mention of Rothko by name, and the types of

misrepresentations made as to provenance and authenticity), the judicially noticed

materials themselves, with one exception, did not "relate[] directly" to Seidel or

Frankfort. They not only did "*not* draw *a clear connection* between [Seidel and

39

Frankfort]" and the entities discussed, D.Ct.Op., 2021 WL 3621695, at *9 (emphases added), they made no mention of Seidel or Frankfort.

The lone exception in the media reports--the district court's third reason for finding inquiry notice--was an article in which Frankfort was "mentioned extensively," D.Ct.Op., 2021 WL 3621695, at *9. The court provided no description of those mentions and did not explain why they would have suggested to Meyer that the Painting was probably a forgery. As we read the article, it does not portray Frankfort as an ally of Knoedler or its president and does not indicate that he collaborated with any of the other individuals who were portrayed as committing art fraud. Rather, the article described Frankfort as an art-scene "middleman" who, in connection with one of Knoedler's sales, was in fact questioning representations made by Knoedler and its president. Michael Shnayerson, *A Question of Provenance*, Vanity Fair, May 2012, at 111, 120. As we noted in *Staehr*, a public report that mentions a defendant's name without any accusation of his wrongdoing does not put the plaintiff on inquiry notice. *See* 547 F.3d at 434. A person of ordinary intelligence is not put on inquiry notice by name-recognition alone.

In sum, the district court did not find that the lawsuits and media reports related directly to Meyer's fraud claims against Seidel and Frankfort.

40

Instead, the court recognized that "none of the lawsuits or reports accuse[d Seidel or Frankfort] of fraud," and that "the lawsuits and news reports d[id] not draw a clear connection between Defendants and the Knoedler Gallery," D.Ct.Op., 2021 WL 3621695, at *9. None of them mentioned Seidel; and the only one that mentioned Frankfort did not accuse him of culpable conduct. Even assuming that the reports were so widespread that we can infer that Seidel was on notice of them, the judicially noticed matters could not support the court's inference that they would suggest that the Painting Meyer bought from Seidel at the recommendation of Frankfort was more likely than not a forgery.

C. *Dismissal of the Fraud Claims for Failure To State a Claim, and the Denial of Leave To Amend*

In addition to finding Meyer's fraud claims time-barred on the ground that this action was not commenced within two years of the time at which he had inquiry notice of the fraud he asserted here against Seidel and Frankfort, the district court found that those claims must be dismissed pursuant to Rules 12(b)(6) and 9(b) for failure of the complaint to allege more than conclusorily that defendants had knowledge that, *inter alia*, the Painting was a forgery. While we view the complaint as adequately complying with the requirements of Rule 9(b),

41

we agree with the district court's ruling that the allegations as to knowledge were insufficient under the standard set by *Iqbal*.

1. *Sufficiency*

To state a claim for fraud, a plaintiff must allege scienter, "that is, . . . that the defendant knew of the falsity of the representation being made to the plaintiff." *Houbigant, Inc. v. Deloitte & Touche LLP*, 303 A.D.2d 92, 98, 753 N.Y.S.2d 493, 498 (1st Dep't 2003). Rule 9(b), which deals with the pleading requirements for the mental elements of claims of fraud or mistake, provides as follows:

> **(b) Fraud or Mistake; Conditions of Mind.** In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

Fed. R. Civ. P. 9(b). As described in Part I.A. above, Meyer's complaint set out the circumstances of his dealings with Seidel and with Frankfort, recounted the statements he alleged were made by Seidel and adopted by Frankfort, including that the Painting was the work of Rothko, that the Painting would be included in the catalogue raisonné of Rothko's works then being compiled, and that the Painting was actually signed by Rothko and had been acquired from Rothko by the seller's family. (*See* Complaint ¶ 6.) The complaint alleged that these

statements were made to Meyer by Seidel "with the knowledge and approval of Frankfort" (*id*.), and that "[a]t the time Seidel made th[ose] misrepresentations to [Meyer], defendants"--plural--"knew they were false" (*id*. ¶ 7). This general allegation that Seidel and Frankfort "knew" the falsity of the specific misstatements alleged in ¶ 6 was sufficient to comply with Rule 9(b)'s express provision that "knowledge . . . may be alleged generally."

Given the pleading standard established by *Iqbal*, however, we agree with the district court that the complaint's general allegations of defendants' knowledge were insufficient. Under *Iqbal*, a complaint must contain enough factual allegations to make the claim one that is not just conceivable but "'plausible.'" 556 U.S. at 680 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("*Twombly*")). "Threadbare recitals of the elements of a cause of action" may not suffice, *Iqbal*, 556 U.S. at 678, especially when there may be an "'obvious alternative explanation,'" *id*. at 682 (quoting *Twombly*, 550 U.S. at 567). Here, an obvious possible alternative was that Seidel and Frankfort had been duped by the Painting's seller. We see no factual allegations in the complaint sufficient to "'nudge[]'" Meyer's claims of knowing fraud "'across the line from conceivable to plausible,'" *Iqbal*, 556 U.S. at 680 (quoting *Twombly*, 550 U.S. at 570).

43

Accordingly, we agree that the complaint, in alleging knowledge only conclusorily, without any allegation of facts that would permit an inference of defendants' knowledge, fell short of stating plausible claims of fraud, and was therefore dismissable under Rule 12(b)(6).

We do not agree, however, that the complaint should have been dismissed with prejudice and without leave to amend as to the claims of fraud.

## 2. *Leave To Amend*

As a general matter, the Federal Rules provide that leave to amend should be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). Rule 15 "reflects two of the most important principles behind the Federal Rules: [P]leadings are to serve the limited role of providing the opposing party with notice of the claim or defense to be litigated, and 'mere technicalities' should not prevent cases from being decided on the merits." *Monahan v. New York City Dep't of Corrections*, 214 F.3d 275, 283 (2d Cir.) (citations omitted), *cert. denied*, 531 U.S. 1035 (2000). "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962). "Where the possibility exists that the defect can be cured and there is no prejudice to the

44

defendant, leave to amend at least once should normally be granted as a matter of course." *Oliver Schools, Inc. v. Foley*, 930 F.2d 248, 253 (2d Cir. 1991). However, leave need not be granted in cases of "futility of amendment." *Foman*, 371 U.S. at 182. We review the district court's denial of leave to amend for abuse of discretion; to the extent that the denial is based on a determination that amendment would be futile, we review that determination de novo. *See, e.g., Balintulo v. Ford Motor Co.*, 796 F.3d 160, 164 (2d Cir. 2015), *cert. denied*, 579 U.S. 923 (2016).

In the district court, Meyer contended that the complaint (originally filed in a state court) was sufficient to meet the requirements of the Federal Rules of Civil Procedure, but he asked the court, if it found the complaint insufficient, to allow him to file an amended complaint. As described in Part I.C. above, the court denied leave to amend on the ground that all of Meyer's claims were time-barred, and thus any amendment would be futile. As discussed in Parts II.B.2. and 3., however, the conclusion that Meyer's claims of fraud were time-barred was based on the court's erroneous application of the principles governing inquiry notice. Accordingly, the court's denial, on the ground of futility, of leave to amend the complaint to assert the fraud claims was as a matter of law erroneous.

45

We note that defendants suggest that on this appeal Meyer has not

sufficiently argued for reversal of the district court's denial of his request for leave

to file an amended complaint. We disagree. Meyer's notice of appeal pinpointed

just two challenged decisions, and one of them was the order "denying [his]

request to amend the complaint." (Notice of Appeal dated September 14, 2021.) In

his initial brief in this Court, Meyer listed two issues for appeal, the second of

which asserted that the district court "erred in denying Meyer's request to amend

the complaint, based on its conclusion that any such amendment would be futile."

(Meyer Initial Brief at 2.)

Further, although there was no separate section in the brief devoted

solely to his challenge to the denial of leave to amend, Meyer's brief repeatedly

argues that that denial was erroneous because the court's futility holding was

premised on its erroneous ruling that his fraud claims were time-barred by reason

of the 2011 telephone call and the various news media. (*See*, *e.g.*, *id*. at 5 ("the

District Court held . . . *as a matter of law*, that the statute of limitations *bar[red]*

Meyer's claims, as well as *any possible amendment of the complaint*" (first emphasis in

original; other emphases ours)); *id*. at 7 ("the District Court dismissed the action

without leave to amend based on two matters of which it took judicial notice and

drew improper inferences . . . . The first matter was a brief telephone call--

46

referenced not in the complaint, but in an attorney demand letter--that did nothing to alert Meyer to the fraud. The second consisted of New York news reports and a magazine article. . . ."); *id*. at 8 ("Even if the District Court were permitted to consider these matters for their truth (which it was not) . . . . [a]t the very least, Meyer should have been permitted to amend his complaint to address the factual questions raised by the District Court and materials on which it relied"); *id*. at 15 (the district court's erroneous view that inquiry notice was sufficiently established by the 2011 call to make Meyer's fraud claims time-barred was "one of the two foundations of the District Court's" denial of "leave to amend"); *id*. at 18 (the district court's "vast and inexplicable leap" in finding that the New York news story reports about an art dealer that had no association with Seidel was the other foundation for the district court's futility-based denial of "leave to amend"); *id*. at 25 (those materials beyond the complaint "w[ere] the only 'evidence' cited by the District Court in support of its judgment ending Meyer's case against Frankfurt without . . . leave to amend"); *id*. at 32 ("If . . . this Court were to find that the facts underlying Meyer's contentions are not sufficiently alleged in his California state court complaint, Meyer respectfully requests the opportunity to amend that complaint to satisfy any requirements deemed to be lacking.").)

We conclude that Meyer has sufficiently presented in his brief on appeal his arguments for reversal of the denial of leave to amend.

The "futility" basis on which the district court denied Meyer's requested for leave to file an amended complaint--to the extent that it alleged claims for fraud--was erroneous because it was based on the court's erroneous ruling that those claims were time-barred. Justice requires that the denial of leave to amend be reversed.

## CONCLUSION

We have considered all of Meyer's arguments that are properly raised before us and have found them to be without merit except to the extent indicated above. We affirm so much of the judgment as dismissed with prejudice the complaint's second, third, and fourth causes of action, claiming negligent misrepresentation, breach of warranty, and mistake-based rescission. We vacate so much of the judgment as (a) dismissed with prejudice, as time-barred, the

complaint's cause of action for fraud, and (b) denied leave to file an amended

complaint asserting those fraud claims.  The matter is remanded for further

proceedings not inconsistent with this opinion.

No costs.

RICHARD J. SULLIVAN, *Circuit Judge*, concurring in part and dissenting in part:

I agree with the majority that the district court properly dismissed Ron Meyer's claims for negligent misrepresentation, breach of warranty, and rescission – all of which were barred by the applicable statutes of limitations. I also agree that Meyer's complaint failed to satisfy the pleading standards for fraud under Federal Rule of Civil Procedure 8. I write separately only because I disagree with the majority's vacatur of the district court's denial of Meyer's request for leave to amend his complaint. To my mind, Meyer has waived any challenges to the district court's denial, and I see no reason for giving him another opportunity to replead his fraud claims.

Below, the district court denied Meyer leave to amend his fraud claims, finding that any amendments to Meyer's complaint would be futile because the claims were time-barred. The majority disagrees with the district court's assessment of the statute of limitations, instead concluding that the fraud claims should be dismissed on the alternative grounds that Meyer failed to plead the elements of fraud in his complaint. But because the failure to state a claim – unlike time-bar – might be cured by the inclusion of additional facts in an amended pleading, the majority believes that leave to amend, which should be "freely

give[n] . . . when justice so requires," is warranted. Maj. Op. at 44 (quoting Fed. R. Civ. P. 15(a)(2)). Unlike the majority, I am reluctant to reach the leave-to-amend inquiry, which, done properly, would require us to delve into difficult questions relating to the relevant statute of limitations and inquiry notice.[1] Those questions, in my view, are close ones that we need not reach in light of (1) Meyer's failure to plead sufficient facts to state his claims of fraud and (2) his apparent waiver of the leave-to-amend issue on appeal.

*First*, I would affirm the district court's dismissal of Meyer's fraud claims based on his failure to plead a factual basis for those causes of action. The district court cited Meyer's "fail[ure] to plausibly plead the elements of his fraud claim[s]" as an "alternative ground" for dismissal. Sp. App'x at 21–23. The majority and I agree that Meyer's fraud claims were not adequately pleaded under Rule 8 and the standards set forth by *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

---

[1] In particular, we would have to determine whether the district court erred in relying on matters outside the four corners of Meyer's complaint – namely, a pre-suit demand letter that Meyer's counsel sent to Susan Seidel months before commencing this action and other publicly filed lawsuits also involving forged artwork – and whether those matters establish that Meyer was on inquiry notice of Seidel's and/or Jaime Frankfort's alleged fraud as of 2011.

*Second*, I would reject Meyer's challenge to the denial of his request for leave to amend for the simple reason that he has waived that issue before this Court. Under our waiver doctrine, "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *Tolbert v. Queens Coll.*, 242 F.3d 58, 75 (2d Cir. 2001) (internal quotation marks omitted). "[T]o properly present an issue on appeal," "an appellant . . . must state the issue *and* advance an argument." *Gross v. Rell*, 585 F.3d 72, 95 (2d Cir. 2009) (internal quotation marks omitted). "Merely mentioning" or "[s]imply stating" the issue in a brief is not enough. *Id.* (internal quotation marks omitted).

On appeal, Meyer advances no arguments as to why he should be permitted to replead his fraud claims and correct the deficiencies of his pleadings. By my count, the argument section of Meyer's opening brief contains four passing references to this issue, which state that the district court's dismissal was "without leave to amend," that dismissal was "without argument or leave to amend," and that "[he] should be given leave to amend" even if his complaint did not satisfactorily plead fraud. Meyer Br. at 15, 18, 25, 29. These "[m]ere[] mention[s] [of] the relevant issue in [Meyer's] opening brief [are] not enough," since "issues not sufficiently argued are in general deemed waived and will not be considered

on appeal." *Rell*, 585 F.3d at 95 (alteration and internal quotation marks omitted). If "issues adverted to in a *perfunctory* manner" must be "deemed waived," *Tolbert*, 242 F.3d at 75 (emphasis added) (internal quotation marks omitted), I have a hard time seeing why issues adverted to in an *implicit* manner should fare any better.

The majority turns a blind eye to Meyer's manifest waiver of the leave-to-amend issue in this case. It makes much of Meyer's notice of appeal, which purportedly "pinpoint[s]" the district court's "order denying his request to amend [his] complaint," Maj. Op. at 46 (alteration and internal quotation marks omitted), as well as cursory references to the leave-to-amend issue in Meyer's opening brief, *see id.* at 46–48. But neither Meyer's notice of appeal nor his appellate brief actually "*advance[s]*" arguments as to *why* it was error for the district court to deny his request for leave to amend or what he could do to cure the pleading deficiencies identified by the district court (and the majority on appeal). *Rell*, 585 F.3d at 95 (emphasis added).

To be clear, faithful application of our waiver doctrine is not an exercise in mere formalism. In light of "[t]he enormous volume of briefs and arguments pressed on each panel of this [C]ourt at every sitting," *United States v. Restrepo*, 986 F.2d 1462, 1463 (2d Cir. 1993), it makes perfect sense for us to hold "parties

4

represented by competent counsel . . . responsible for" advancing "argument[s] entitling them to relief," *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020) (alteration and internal quotation marks omitted).  By enforcing this "principle of party presentation," we also incentivize members of the Circuit bar to identify and deliver their clients' best arguments on appeal.  *Id.*  These strike me as compelling reasons that justify the scrupulous enforcement of our waiver doctrine in cases like this one.

For all of these reasons, I would affirm the district court's denial of Meyer's request for leave to amend his complaint to replead his fraud claims.